# United States Court of Appeals for the Federal Circuit

---

**NUANCE COMMUNICATIONS, INC.,**
*Plaintiff-Appellant,*

v.

**ABBYY SOFTWARE HOUSE, ABBYY USA SOFTWARE HOUSE, LEXMARK INTERNATIONAL, INC., ABBYY PRODUCTION LLC, AND ABBYY SOFTWARE LTD.,**
*Defendants-Appellees.*

---

2010-1100

---

Appeal from the United States District Court for the Northern District of California in case no. 08-CV-2912, Judge Jeffrey S. White.

---

Decided: November 12, 2010

---

M. CRAIG TYLER, Wilson Sonsini Goodrich & Rosati, of Austin, Texas, argued for plaintiff-appellant. With him on the brief were DAISY S. POON and TUNG-ON KONG, of Palo Alto, California.

MATTHEW M. WAWRZYN, Wawrzyn LLC, of Chicago, Illinois, argued for defendants-appellees. Of counsel on

the brief was PERRY R. CLARK, Law Offices of Perry R. Clark of Palo Alto, California.

———————————

Before RADER, *Chief Judge*, and NEWMAN and PROST, *Circuit Judges*.

RADER, *Chief Judge*.

Nuance Communications, Inc. ("Nuance") filed this patent infringement action against Abbyy USA Software House ("Abbyy USA"). After obtaining discovery from Abbyy USA, Nuance filed an Amended Complaint naming as defendants Abbyy Production LLC ("Abbyy Production"), a corporation organized under the laws of the Russian Federation, and Abbyy Software, Ltd. ("Abbyy Software"), a corporation organized under the laws of the Republic of Cyprus. Abbyy Production and Abbyy Software (collectively, "the Abbyy defendants") thereafter filed a motion to dismiss for lack of personal jurisdiction and improper service of process, which was granted by the United States District Court for the Northern District of California without an evidentiary hearing or further discovery. *Nuance Commc'ns Inc. v. Abbyy Software House*, No. 08-02912, 2009 WL 2707390 (N.D. Cal. Aug. 25, 2009).

Nuance appeals the dismissal of Abbyy Production and Abbyy Software. Because Abbyy Production purposefully directed activities at residents of California, because Nuance's claims for patent infringement arise out of those activities, and because the assertion of personal jurisdiction is reasonable and fair, this court reverses the district court's dismissal of Abbyy Production on personal jurisdiction grounds. Because the record calls for further discovery on these jurisdiction questions, this court vacates the dismissal of Abbyy Software and remands. This

court also determines that the district court erred by dismissing the case for improper service of process.

I.

Nuance owns by assignment U.S. Patent Nos. 5,131,053; 5,381,489; 5,436,983; 6,038,342; 5,261,009; 6,810,404; 6,820,094; and 6,742,161 (collectively, "the patents-in-suit"). These patents relate to methods and systems for performing optical character recognition, recognizing documents, and managing documents.

On February 19, 2008, Nuance filed suit in the United States District Court for the Central District of California against Abbyy USA and Lexmark International, Inc. ("Lexmark") alleging infringement of the patents-in-suit. The Central District later transferred the action to the Northern District of California. On November 17, 2008, Abbyy USA responded to interrogatories seeking the identity and location of related entities. Abbyy USA identified Abbyy Software, a corporation organized under the laws of the Republic of Cyprus, as its parent corporation. Abbyy USA is a wholly-owned subsidiary of Abbyy Software. Abbyy USA also identified Abbyy Production, a corporation organized under the laws of the Russian Federation, as another wholly-owned subsidiary of Abbyy Software.

Nuance thereafter filed an Amended Complaint adding Abbyy Production and Abbyy Software as defendants, and also served document requests on both companies. In the Amended Complaint, Nuance alleged that the Abbyy defendants infringe one or more claims of the patents-in-suit by "making, using, selling, and/or offering to sell in this country, and/or importing into this country" certain software products. On May 7, 2009, a local process server served Abbyy Production with the Amended Complaint, Amended Summons, and Standing Orders of the Court, as

well as Russian translations of these documents. Abbyy Production received this service of process in Moscow. Specifically, Ms. Nadezhda Kolpakova, identified as the Manager of Abbyy Production, personally received the documents.

On June 25, 2009, the Abbyy defendants filed a motion to dismiss both companies for lack of personal jurisdiction and to dismiss Abbyy Production for improper service of process. The Abbyy defendants supported their motion with written declarations and previously unproduced documents. They also filed a motion for a protective order to preclude pending written discovery until the trial court resolved the motion to dismiss.

The district court dismissed both Abbyy Production and Abbyy Software. With respect to personal jurisdiction, the court provided a single paragraph of analysis, concluding that the record did not show that Abbyy Production and Abbyy Software purposefully directed any specific activity at residents of California or within the forum state, or that Nuance's claims arise out of or relate to those activities. *Nuance Commc'ns*, 2009 WL 2707390, at *3. The district court also found that Nuance did not properly serve Abbyy Production in accordance with the Hague Convention. *Id.* at *2. Although the Abbyy defendants had not moved to dismiss Abbyy Software for improper service of process, the district court *sua sponte* determined that Nuance improperly served Abbyy Software. *See id.* at *2.

Neither Abbyy Production nor Abbyy Software responded to Nuance's discovery requests. The district court conducted no evidentiary hearing on jurisdiction before dismissal. Although Nuance had requested a continuance pending limited jurisdictional discovery, the district court did not address this request in its order.

The district court found the Abbyy defendants' motion for a protective order moot.

Both Nuance and the Abbyy family of companies develop and sell software products including optical character recognition ("OCR") software. According to Abbyy Software's website, "ABBYY is an international company with 9 offices in different countries, including Russia, Germany, the United States, Ukraine, the UK, Cyprus, Japan and Taiwan." J.A. 252. The website states that ABBYY was founded in 1989 by David Yang, currently "the chairman of ABBYY's board of directors." J.A. 252. The website describes a single "Global Management Team" for the Abbyy companies, which includes David Yang, the Chairman of the Global Management Team and the CEO of Abbyy Software; Sergey Andreyev, the CEO of Abbyy Production; and Dean Tang, the CEO of Abbyy USA.

A February 2008 article in *Trade Secret Magazine* states that "[i]n the opinion of the company's management, nothing is able to prevent the company now from conquering the U.S. market." J.A. 246. The article reports that David Yang, the CEO of Abbyy Software, previously "failed at the American market," but he is now "going to make his return with new solutions." J.A. 243.

The article features extensive quotes from Sergey Andreyev, the CEO of Abbyy Production, about U.S. activity. For example, he characterizes the launch of Abbyy's FineReader software in the United States as an act of revenge for this lawsuit, even though Abbyy Production and Abbyy Software had yet to be named as parties to the suit:

Nowadays ABBYY is actively getting ready for the issue of the FineReader software program to the American retail market. The company was forced

to do so by its main American competitor – by the Nuance Communications Company, which in the end of last year filed a lawsuit against ABBYY claiming the latter used the company's developments in its work. "They felt a threat on our behalf -- and struck first. Now Americans demand us to present our software program code for examination by experts," Sergei Andre[y]ev explains the situation. "We do not want to show it and we demand an independent expert examination. *And we decided to enter the retail market so that their life does not seem so wonderful.*" In the past the company thought that retail sales were unprofitable due to a high entrance price and the need to conduct advertisement campaigns. "However, when competition inflicted the first blow, this became becoming a matter of principle, and *the winner of the battle may win the whole US market, too.* We are no strangers to battles with competition," Andreev puts on a brave face.

J.A. 245 (emphases added).[1]

---

[1]     The Abbyy defendants contend that this *Trade Secret Magazine* article should be disregarded as inadmissible hearsay. This court rejects that contention. Admissions by party-opponents are not hearsay. Fed. R. Evid. 801(d)(2). Statements of a declarant's then-existing state of mind, such as intent, plan, or motive, are exceptions to hearsay. Fed. R. Evid. 803(3). Even to the extent portions of the article may nevertheless qualify as hearsay, "there is no strict prohibition on a court's consideration of hearsay" in connection with a motion to dismiss for lack of personal jurisdiction. *Campbell Pet Co. v. Miale,* 542 F.3d 879, 889 (Fed. Cir. 2008).

Although the details of the Abbyy defendants' business arrangements have yet to be fully explored through discovery, the record shows that Abbyy Production develops software and provides Abbyy USA with master copies of that software. According to an agreement dated January 1, 2007, between Abbyy USA and Abbyy Production entitled Software License Agreement ("the Agreement"), Abbyy USA purports to nonexclusively license from Abbyy Production a proprietary right to use, sell, reproduce, distribute, and market software in the United States. The Agreement states that Abbyy Production shall provide master copies of computer software programs to Abbyy USA, including the FineReader product line, documentation for that software, including sale and service documentation, and technical support available by oral or written consultation. In exchange for these proprietary rights, Abbyy USA pays to Abbyy Production the net amount of sales, less costs, expenses, and an operating profit margin of 4.5%. The laws of the Russian Federation govern the Agreement.

On appeal, Nuance challenges the district court's determination that it cannot exercise personal jurisdiction over Abbyy Production and Abbyy Software. Nuance also challenges the district court's determination that these companies were served in a legally insufficient manner. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## II.

The law of the Federal Circuit, rather than that of the regional circuit in which the case arose, applies to determine whether the district court properly declined to exercise personal jurisdiction over an out-of-state accused infringer. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). A district court's conclusion on personal jurisdiction is a question of law subject to review without

deference.  *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000).  This court reviews district court findings regarding underlying disputed facts for clear error.  *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1269 (Fed. Cir. 1998).

"Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process."  *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998).  Because California's long-arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal law are the same.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum State."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

General jurisdiction is not at issue in this case.  The Federal Circuit applies a three prong test to determine if specific jurisdiction exists:  (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair.  *Akro*, 45 F.3d at 1545-46; *see also Schwarzenegger*, 374 F.3d at 802.

The Supreme Court advises that the third factor applies only sparingly.  When a defendant seeks to rely on the "fair play and substantial justice" factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, "he must

present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. This court has echoed that restrictive characterization of the third factor, stating that "defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'" *Akro*, 45 F.3d at 1549 (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)).

Without discovery and a record on jurisdiction, this court must resolve all factual disputes in the plaintiff's favor. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002). "[W]here the plaintiff's factual allegations 'are not directly controverted, [they] are taken as true for purposes of determining jurisdiction . . . .'" *Akro*, 45 F.3d at 1543 (quoting *Beverly Hills Fan*, 21 F.3d at 1563). To survive a motion to dismiss in the absence of jurisdictional discovery, plaintiffs need only make a prima facie showing of jurisdiction. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005).

On appeal, Nuance seeks a reversal of the dismissal of the Abbyy defendants, arguing that the evidence presented was more than sufficient to establish personal jurisdiction. As an alternative to reversal, Nuance urges this court to vacate the judgment below and remand to allow Nuance to take jurisdictional discovery.

Nuance contends that Abbyy Production purposefully directed activities at residents of California, thereby satisfying the first prong of the *Akro* test for specific personal jurisdiction. Nuance focuses on the CEO's stated

goal of "conquering" the U.S. market; the importation of allegedly infringing products into California; the extraction of royalty payments for the sale of those products; and Abbyy Production's agreement to provide assistance to Abbyy USA in selling, reproducing, and modifying the accused products in California. As of the February 11, 2008 date of the *Trade Secret Magazine* article, Abbyy's FineReader software program allegedly controlled about thirty-percent of the U.S. market.

Appellees respond that Abbyy Production did not purposefully direct activity to California, arguing that the Abbyy defendants took no action under 35 U.S.C. § 271 directed at the forum. They rely principally on *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1310 (Fed. Cir. 1999) and *Pieczenik v. Dyax*, 265 F.3d 1329, 1336 (Fed. Cir. 2001), both of which affirmed dismissals for lack of jurisdiction.

Neither of these cases controls on this record. *HollyAnne* examined whether a single "offer to donate" is the legal equivalent of an "offer to sell" for purposes of establishing personal jurisdiction for an actionable claim for patent infringement. *See* 199 F.3d at 1309 (explaining that the plaintiff had attempted "to base personal jurisdiction on one offer to donate and nothing more"). *HollyAnne* is inapposite because Abbyy Production seeks to "conquer" the U.S. market, not to donate its services, and its contacts with California are much more significant than the single interaction in *HollyAnne*.

In *Pieczenik*, the plaintiff sued the defendant in New York, alleging in pertinent part that an agreement between the defendant and a New York company constituted an act of inducement prohibited by § 271(b). *Pieczenik*, 265 F.3d at 1331, 1334. This court affirmed an order dismissing the defendant for lack of jurisdiction,

holding that the agreement did not confer personal jurisdiction because (1) the agreement was not negotiated or executed in New York; (2) there was no visit to New York in connection with the licensing; (3) the choice-of-law provision did not specify New York law; (4) the agreement did not require the defendant to send any goods into New York or provide any services in New York; and (5) the only payments were payments by the licensee in New York to the defendant in Massachusetts. *Id.* at 1335-36.

While the arrangement between Abbyy Production and Abbyy USA superficially resembles that in *Pieczenik*, this court perceives several important differences. In *Pieczenik*, this court conducted its jurisdictional analysis under New York's long-arm statute, 265 F.3d at 1333, which unlike California's long-arm statute, does not reach the limits of due process, *see Talbot v. Johnson Newspaper Corp.*, 522 N.E.2d 1027, 1029 (N.Y. 1988). The district court in *Pieczenik* also allowed jurisdictional discovery and held an evidentiary hearing that produced an ample record on which to evaluate defendant's motion to dismiss. 265 F.3d at 1330. Absent discovery or a hearing, the district court in this case made its decision without the support of such a record.

Perhaps more importantly, *Pieczenik* involved arms-length transactions between unrelated entities. 265 F.3d at 1331-32, 1336. In contrast, the Agreement between Abbyy Production and Abbyy USA involves commonly owned sister companies operating under a consolidated Global Management Team. In *Pieczenik*, the purported infringement arose out-of-state, 265 F.3d at 1334, whereas here the purported infringement occurred in California. Furthermore, in *Pieczenik*, plaintiffs alleged that a patent license agreement was sufficient to confer personal jurisdiction, 265 F.3d at 1334, whereas this case features the Agreement, an expressed desire to "win the

whole US market" by issuing ABBYY's FineReader software program in the United States, and the admitted distribution of that software to Abbyy USA, a California entity. Over ninety-five percent of the profits resulting from the sale of that software flow to Abbyy Production. J.A. 245.

"[W]here the defendant 'deliberately' has engaged in significant activities within a State . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 475-76 (internal citations omitted). Abbyy Production purposefully directed its activities at residents of California and therefore satisfies the first prong of the *Akro* test.

Abbyy Production's actions also satisfy the second prong of the *Akro* test, that the claims arise out of or relate to the purposefully directed activities, because Nuance's infringement claims relate to Abbyy Production's importation of goods into California. Nuance alleges in its complaint that Abbyy Production directly infringes and infringes by inducement by "importing into this country" certain software products including at least the FineReader line of products. The Abbyy defendants did not dispute this in their declarations before the district court. Nevertheless, Appellees now argue, without citation, that Abbyy Production by definition cannot import products within the meaning of § 271(a) because Abbyy Production has no physical presence in California. To the contrary, the record shows that Abbyy Production provided copies of the accused software products to Abbyy USA, a California entity. By operation of the Agreement, Abbyy Production retains ownership in the accused soft-

ware even after that software enters California. Greater than ninety-five percent of the profits in California flow to Abbyy Production. Under these facts, Abbyy Production has sufficient presence in the forum for importation under 35 U.S.C. § 271(a). *Cf. MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376-77 (Fed. Cir. 2005) (affirming summary judgment of no direct infringement by defendant where defendant manufactured accused product overseas, sold those products to another party overseas, who then employed yet another party to package and send the products free-on-board to a U.S. entity, where title passed to the U.S. entity.)

Abbyy Production also runs afoul of the Supreme Court's and this court's stream of commerce jurisprudence. In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980), the Supreme Court stated that a defendant could purposefully avail itself of a forum by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate." In *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), a plurality of four justices concluded that something more was required—"*an action of the defendant purposefully directed toward the forum state.*" *Id*. at 112. The cited examples of purposeful direction included "marketing through a distributor . . . in the forum [s]tate" and "providing regular advice to customers." *Id*. Four other justices considered the showing of additional conduct unnecessary. *Id*. at 117.

In *Beverly Hills Fan*, this court addressed the stream of commerce theory in the context of intellectual property interests, reversing a district court's dismissal on personal jurisdiction grounds of a foreign manufacturer and an out-of-state distributor. 21 F.3d at 1560, 1566. Although the foreign manufacturer had no license for doing

business in the forum, no assets, employees, or agents for service of process in the forum, and no direct sales in the forum, this court found the exercise of jurisdiction proper because the manufacturer purposefully shipped products through an established distribution channel with the expectation that those products would be sold in the forum. *Id.* at 1564-67. The court declined to address whether the exercise of personal jurisdiction requires something more than the mere act of placing a product in the stream of commerce with the expectation that it would be purchased in the forum state, finding that the plaintiff made the required jurisdictional showing under either version of the stream of commerce theory. *Id.* at 1566.

Nuance has also made this required jurisdictional showing. Abbyy Production purposefully ships the accused software products into California through an established distribution channel, with the expectation that copies of those products will be sold in California. Unlike *Beverly Hills Fan*, which involved the more attenuated connection of an out-of-state distributor, *see id.* at 1559-60, Nuance brought suit in the same forum in which Abbyy Production's distributor, Abbyy USA, is located. Moreover, under the Agreement, Abbyy Production has agreed to furnish Abbyy USA with new versions and updates of the Software, technical support, and oral and written consultations. The Supreme Court has endorsed precisely this sort of purposeful activity as reinforcing the proper exercise of jurisdiction. *See Asahi*, 480 U.S. at 112.

Although Appellees argue that Abbyy Production is merely licensing the rights to software in exchange for royalty payments, this distinction is irrelevant for jurisdictional purposes. Abbyy Production has purposefully imported the accused products into California, made those products available for sale through an established distri-

bution chain, and the cause of action for patent infringement is alleged to arise out of these activities. No more is required for specific jurisdiction. *See Burger King Corp.*, 471 U.S. at 472-73; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984); *Beverly Hills Fan*, 21 F.3d at 1565.

With respect to the third prong of the *Akro* test, Appellees contend that assertion of jurisdiction over Abbyy Production would be unfair, relying principally on *Asahi*. In *Asahi*, the Supreme Court held that a California court's otherwise constitutional exercise of jurisdiction was unreasonable because of the substantial burdens on a foreign defendant. 480 U.S. at 115. However, *Asahi* involved an upstream supplier who did not create, control, or employ the distribution system that brought its goods (tire valves) to California. *Id.* at 112-13. In contrast, Abbyy Production established a distribution system with Abbyy USA that was intended to deliver products to the U.S. market via a commonly owned California entity. Abbyy Production knew the destination of its products, and its conduct and connections with the forum state were such that it should have reasonably have anticipated being brought into court there. *See World-Wide Volkswagen*, 444 U.S. at 292. Additionally, Abbyy Production and Abbyy USA share the same counsel and operate under a consolidated Global Management Team. These relationships should ameliorate any possible burden of litigating in California. *See Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1370 (Fed. Cir. 2010). Because the exercise of jurisdiction over Abbyy Production would not violate due process, and because California's long-arm statute is coextensive with federal due process, this court concludes that the district court erred when it declined to exercise personal jurisdiction over Abbyy Production.

Nuance also challenges the district court's dismissal of Abbyy Software on personal jurisdiction grounds. Nuance contends that Abbyy Software purposefully directs its activities at residents of California through the importation and sale of infringing products via distribution channels it controls; while Appellees maintain that Abbyy Software is simply a holding company that neither imports nor sells goods in California or elsewhere.

The limited evidence of record supports Nuance's contention that Abbyy Software functions as more than a holding company. Abbyy Software's website portrays Abbyy as a single company with offices in many countries, including the United States. The CEO of Abbyy Software, who expressed a desire to return to the U.S. market, is both the founder of the Abbyy companies and the Chairman of Abbyy's Global Management Team, which includes among its members the CEOs of Abbyy USA and Abbyy Production. Abbyy Software's website lists multiple California entities as customers of the accused products, including Hewlett-Packard, Alameda County, and Los Angeles County. Abbyy Software's website also promotes the sale of these products in California by providing the names and contact information for retail stores located in California as well as online stores that sell the FineReader product.

Similar facts have been held to establish a prima facie case of jurisdiction. For example, in *Cardsoft, Inc. v. Verifone Holdings, Inc.*, No. 08-098, 2009 WL 361069, at *1-2 (E.D. Tex. Feb. 10, 2009), the district court held that a prima facie showing for the exercise of personal jurisdiction had been made over a foreign entity that alleged it was merely a holding company. The district court in that case noted that the company advertised the accused products on its website, shared an overlapping management team with its domestic subsidiary, and enjoyed

revenues from the sales of allegedly infringing products. *Id*. at *1.

Nevertheless, the extent of Abbyy Software's involvement remains uncertain. Abbyy Software does not directly sell products through its website or otherwise. The record does not show at this point that Abbyy Software receives revenue from the sale of the accused software. Abbyy Production, not Abbyy Software, appears to develop the accused software and import master copies of that software into California. While the Global Management Team and the statements in the *Trade Secret Magazine* article suggest that Abbyy Software exerts some control over its subsidiaries, the record is unclear about the degree to which Abbyy Software intentionally established distribution channels that it knew, or could have foreseen, terminated in California. Thus, on this record, this court cannot determine that Abbyy Software purposefully availed itself of the privilege of conducting activities in California by some affirmative act or conduct, and that Nuance's claims arise out of those activities.

In the alternative, Nuance appeals the de facto denial of its request for jurisdictional discovery. "We review the district court's denial of discovery, an issue not unique to patent law, for abuse of discretion, applying the law of the regional circuit." *Autogenomics Inc. v. Oxford Gene Tech. Ltd.* 566 F.3d 1012, 1021-22 (Fed. Cir. 2009) (applying Ninth Circuit law (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). In the Ninth Circuit, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)). On the other hand, a trial court may deny juris-

dictional discovery "'when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction,'" *Am. W. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)), or where the request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citing *Butcher's Union*, 788 F.2d at 540). "A decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Laub*, 342 F.3d at 1093 (citation and quotation marks omitted). "Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed." *Id.*

The district court de facto denied Nuance's request for jurisdictional discovery by not addressing it in its dismissal order. *See Nuance Commc'ns*, 2009 WL 2707390. Yet Nuance's request for jurisdictional discovery is not "based on a mere hunch." *See Patent Rights Prot. Grp.*, 603 F.3d at 1372. Rather, the request is supported by, inter alia, Abbyy Software's website and the *Trade Secret Magazine* article, which suggest that Abbyy Software controls the actions of its subsidiaries. Although the proffered documents may be insufficient in themselves to establish a prima face case, this incomplete record nevertheless supports the need for additional discovery to determine the merits of personal jurisdiction over Abbyy Software.

Appellees argue that Nuance's request for discovery was informal and untimely. However, Nuance incorporated its request for jurisdictional discovery into its opposition to the Abbyy defendants' motion to dismiss.

J.A. 215 ("[I]f the Court requires additional evidence to resolve this matter, Nuance, in the alternative requests a continuance of the hearing date pending limited jurisdictional discovery.") Nuance had also served the Abbyy defendants with written discovery at the earliest possible opportunity, concomitant with its filing of the Amended Complaint. This markedly contrasts with the impermissible "eleventh-hour" discovery request made in *Sopcak v. Northern Mountain Helicopter Service*, 52 F.3d 817, 819 (9th Cir. 1995), where the plaintiff failed to conduct discovery during the nine-month period between the filing of the complaint and the court's dismissal order. Appellees also argue that Nuance did not specify material disputed issues of fact warranting discovery. To the contrary, in its opposition brief, Nuance specifically questioned Abbyy Software and Abbyy Production's control over Abbyy USA, as well as the veracity of the Abbyy declarants' statements in view of seemingly contradictory statements from the declarants' employers. "[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . ." *Laub*, 342 F.3d at 1093 (citation omitted). Accordingly, this court holds that the district court abused its discretion by dismissing Abbyy Software without jurisdictional discovery.

## III.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). The Federal Rules of Civil Procedure authorize the service of process made in this case. When decided without an evidentiary hearing, a district court's holding as to sufficiency of service receives no deference. *In re Focus Media Inc.*, 387 F.3d 1077, 1081 (9th Cir. 2004); *United States v.*

*Zeigler Bolt & Parts Co.*, 111 F.3d 878, 880 (Fed. Cir. 1997).

Fed. R. Civ. P. 4(h)(2) states that a foreign corporation served outside the United States must be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  Rule 4(f) states that an individual in a foreign country may be served as follows:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

> (C) unless prohibited by the foreign country's law, by:

> (i)  delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

The Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), (1969) 20 U.S.T. 361, T.I.A.S. No. 6638, referenced in Rule 4(f)(1) above, is a multi-national treaty that governs service of summons on persons in signatory foreign countries. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Each member state must establish a "central authority" for receiving and processing requests for service upon defendants residing within the state. *Id.* at 698-99. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. *Id.* at 699. A signatory to the Convention may also consent to other methods of service within its boundaries, *see* 20 U.S.T. 361, T.I.A.S. No. 6638, Arts. 8, 10, but the Russian Federation has objected to service under these provisions.

The district court granted the Abbyy defendants' motion to dismiss for failure to serve Abbyy Production in accordance with the Hague Convention. Although Nuance did not attempt to serve Abbyy Production through the central authority of the Russian Federation, the record indicates that Nuance could not have done so.

According to a Bureau of Consular Affairs circular published by the U.S. State Department on Russia Judicial Assistance, "requests sent [via diplomatic channels or] directly by litigants to the Russian Central Authority under the Hague Service Convention are returned unexecuted." J.A. 316. Further, the State Department warns that "in the absence of a direct channel for U.S. judicial assistance, U.S. courts and litigants will explore other methods to effect service of process," such as service via an agent of the Russian Federation. J.A. 317. This resulted because the Russian Federation "unilaterally suspended all judicial cooperation with the United States in civil and commercial matters in 2003." J.A. 316.

While the State Department's website alone suggests that service via the Hague Convention would not have been possible, Nuance also submitted the declaration of Celeste Ingalls, Director of Operations of Crowe Foreign Services. She declared that "the Russian Federation does not consider the Hague Service Convention to be in effect between the Russian Federation and the United States, making service via the Hague Service Convention in the Russian Federation not possible." J.A. 222. While Appellees argue that service must have been attempted under the Hague Convention before alternative service methods can be employed, this court disagrees. Rule 4 "was not intended to burden plaintiffs with the [S]isyphean task of attempting service through the Hague Convention procedures when a member state has categorically refused" to effect service. *See Arista Records LLC v. Media Servs. LLC*, No. 06-15319, 2008 WL 563470, at *1 (S.D.N.Y. Feb. 25, 2008). Indeed, numerous courts have found alternate service methods appropriate without a prior attempt to serve through the Hague Convention. *See, e.g.*, *In re LDK Solar Sec. Litig.*, No. 07-05182, 2008 WL 2415186, at *2 (N.D. Cal. June 12, 2008); *In re Potash Antitrust Litig.*,

667 F. Supp. 2d 907, 931 (N.D. Ill. 2009); *Arista Records*, 2008 WL 563470, at \*1-2. This court holds that the district court erred in requiring service of Abbyy Production under the Hague Service Convention.

Nuance served Abbyy Production in Moscow by personal delivery. Appellees contend that Rule 4 broadly prohibits personal service on a foreign corporation outside the United States, since Rule 4(h)(2) states that service may be made on a corporation outside the United States "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Nuance counters that personal service is appropriate if made under Rule 4(f)(2)(A), which provides for service "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction."

The Ninth Circuit has observed that "courts have applied Rule 4(f)(2)(A) to approve personal service carried out in accordance with foreign law." *Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004). Indeed, numerous courts have upheld personal service on a foreign corporation under Rule 4(f)(2)(A). For example, in *Joescan, Inc. v. LMI Technologies, Inc.,* No. 07-5323, 2007 WL 2253319, at \*1 (W.D. Wash. Aug. 2, 2007), the district court found that although not effected through the Canadian Central Authority under the Hague Convention, personal service on a Canadian company in Canada was proper because defendants were served in accordance with Canadian law. Similarly, in *Cosmetech International, LLC v. Der Kwei Enterprise and Co., Ltd.*, 943 F. Supp. 311, 316 (S.D.N.Y. 1996), the court upheld service on a Taiwanese corporation by personal service on its manager in accordance with Taiwanese law. Thus, a corporation can be served by personal delivery under Rules 4(h)(2) and 4(f)(2)(A), provided that personal delivery is prescribed by the

foreign country's laws for service in that country in an action in its courts of general jurisdiction.

Although contested by the parties, this court does not opine on whether the laws of the Russian Federation permit Nuance to personally serve Abbyy Production in its courts of general jurisdiction. Nor do we opine on the effect of the Russian Federation's objection to service of documents by methods listed in Articles 8 and 10 of the Hague Service Convention, which generally covers service by postal channels and through judicial officers or diplomatic and consular agents. *See* 20 U.S.T. 361, T.I.A.S. No. 6638, Art. 10.

Under Rule 4(f)(3), federal courts have discretionary authority to direct service "by other means not prohibited by international agreements." Fed. R. Civ. P. 4(f)(3); *Brockmeyer*, 383 F.3d at 805 (emphasis omitted). "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). The Advisory Committee Note to Rule 4 explains that Rule 4(f)(3) is particularly appropriate where a signatory to the Hague Service Convention has "refused to cooperate for substantive reasons." Fed. R. Civ. P. 4, Advisory Committee Note to Subdivision (f) (1993). The Advisory Committee Note further explains that service under 4(f)(3) might be justified when the foreign country's central authority "refuses to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States." *Id.*

Courts have authorized a wide variety of alternative methods of service under Rule 4(f)(3). *See Rio Props.*, 284 F.3d at 1016-19. One of these, substituted service, was expressly requested by Nuance in opposing the Abbyy defendants' motion to dismiss. Federal courts in Califor-

nia have authorized substituted service under Rule 4(f)(3) on California entities for foreign defendants, including foreign corporations. In *Rio Properties*, 284 F.3d at 1016-19, the Ninth Circuit affirmed court-ordered alternative service methods on a Costa Rican business entity under Rules 4(f)(3) and 4(h)(2). In addition to service via e-mail, the district court ordered substitute service through the mail both to the U.S. office of the defendant's international courier and on the defendant's California based attorney. *Id*. at 1013. In *In re LDK*, 2008 WL 2415186, at *1, *4, the Northern District of California authorized service of process in the California office of a Chinese corporation under Rule 4(f)(3) as a substitute for service on individuals residing in China and for service on another Chinese company. China is a party to the Hague Convention. *Id*. at *1.

Substituted service under Rule 4(f)(3) has also been specifically used to serve litigants from the Russian Federation in multiple U.S. courts. *See, e.g.*, *In re Potash*, 667 F. Supp. 2d at 931-32 (directing substitute service of Russian defendants by four alternative methods including service on U.S. affiliate); *Arista Records*, 2008 WL 563470, at *1 (directing substitute service of process on Russian corporation's attorneys in New York City under Rule 4(f)(3)); *RSM Prod. Corp. v. Fridman*, No. 06-11512, 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) (directing substitute service of process on Russian defendant's attorneys in New York City).

Appellees nevertheless contend, without citation to any case, that Rule 4(f)(3) only authorizes service outside the United States. However, as described above, the Northern District of California has directed substituted service under Rule 4(f)(3) within California, and the Ninth Circuit has affirmed court-directed service within the United States. *See, e.g.*, *Rio Props.*, 284 F.3d at 1017-

19; *In re LDK*, 2008 WL 2415186, at *1. "Defendants have provided no explanation for why transmittal abroad would be required in the present case, when federal law plainly permits service on Defendants' domestic subsidiaries or domestic counsel." *In re Cathode Ray Tube Antitrust Litig.*, No. 07-5944, 2008 WL 4104341, at *1 (N.D. Cal. Sept. 3, 2008).

Appellees also argue that Nuance did not show that Abbyy USA is Abbyy Production's "general manager" under Cal. Corp. Code § 2110, which allegedly forecloses substituted service. This argument confuses service of process under Rule 4(f)(3), which provides for court-directed service "by any means not prohibited by international agreement," with service under Rule 4(e)(1), which does not require a court-order and provides for service by "following state law." Under California law, a foreign corporation may be served by serving that corporation's "general manager in [the] state." *See Gray v. Mazda Motor of Am.*, 560 F. Supp. 2d 928, 929-30 (C.D. Cal. 2008). However, this does not foreclose substituted service on others under Rule 4(f)(3). *See Rio Props.*, 284 F.3d at 1017 ("Without hesitation, we conclude that each alternative method of service of process ordered by the district court was constitutionally acceptable.")

Appellees further argue that this court lacks jurisdiction to determine whether Abbyy USA may be served as Abbyy Production's general manager, since Nuance never attempted to serve Abbyy USA as the substitute for Abbyy Production. To the contrary, attempted service is not a prerequisite. "As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. *No other limitations are evident from the text.*" *Rio Props.*, 284 F.3d at 1014 (emphasis added).

The court-ordered method of service must still be reasonable and comport with constitutional notions of due process. To meet this requirement, the method of service crafted by the court must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). This court finds that substitute service on Abbyy USA would satisfy this standard, as it is reasonably calculated to apprise Abbyy Production of the pendency of the action and afford it an opportunity to respond. Indeed, the *Trade Secret Magazine* article reveals that Abbyy USA was effectively passing information about this lawsuit to Abbyy Production even before Nuance attempted to serve Abbyy Production. "Dismissal is not appropriate when there is a reasonable prospect that service may yet be obtained." *Chapman v. Teamsters Local 853*, No. 07-1527, 2007 WL 3231736, at *3 (N.D. Cal. Oct. 30, 2007). On remand, the district court should therefore allow alternate service as it deems appropriate, including at least substitute service, pursuant to Rule 4(f)(3), of Abbyy Production by substitute service on Abbyy USA.

Nuance also appeals the district court's sua sponte dismissal of Abbyy Software under Rule 12(b)(5) for improper service of process. The district court's opinion did not include any analysis of Nuance's service on Abbyy Software separate and apart from its analysis of Abbyy Production. See *Nuance Commc'ns*, 2009 WL 2707390, at *2. Prior to Abbyy Software's dismissal, none of the parties provided any argument regarding sufficiency of service of process on Abbyy Software.

The district court erred by dismissing Abbyy Software for improper service on its own initiative. *See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d

1351, 1359 (11th Cir. 2008) ("Once a defendant has waived any objection to insufficient service of process, 'the court may not, either upon the defendant's motion or its own initiative,' dismiss on that ground.") (internal citations omitted); *Chute v. Walker*, 281 F.3d 314, 319-20 (1st Cir. 2002). Dismissal of Abbyy Software was particularly problematic because the district court denied Nuance any opportunity to show that its service was proper. *See Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1111 (10th Cir. 2008) (reversing the district court's *sua sponte* dismissal for improper service of process under Rule 4(m) because the court did not give the plaintiffs notice and an opportunity to be heard). Dismissal was also particularly problematic because the district court discusses only service in Russia, which is irrelevant to service on Abbyy Software, a Cypriot entity. *See Nuance Commc'ns*, 2009 WL 2707390, at *1-2. Accordingly, this court reverses the district court's dismissal of Abbyy Software for improper service of process under Rule 12(b)(5). Further, under Rules 12(g) and 12(h)(1), the Abbyy defendants have waived this defense by failing to raise it in their first motion under Rule 12(b). *See Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307 (Fed. Cir. 2005) (advising that a litigant must exercise great diligence in challenging service of process, as this defense is waived at the time "the first significant defensive move is made").

## IV.

On review of the record, this court concludes that the district court erred when it declined to exercise jurisdiction over Abbyy Production and abused its discretion when it denied Nuance's request for jurisdictional discovery. This court further concludes that the district court erred when it dismissed the Abbyy defendants for improper service of process. This court vacates the district

court's judgment and remands for further proceedings consistent with this opinion.

## REVERSED-IN-PART, VACATED-IN-PART, and REMANDED.

### *COSTS*

Each party shall bear its own costs.