# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DELEX INC., a New York corporation,<br><br>          Respondent,<br><br>v.<br><br>SUKHOI CIVIL AIRCRAFT COMPANY, a Russian Federation Closed Joint Stock Company,<br><br>          Appellant. | No. 73068-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br>FILED: April 18, 2016 |

TRICKEY, A.C.J. — Sukhoi Civil Aircraft Company (SCAC), a Russian Federation company, appeals the trial court's denial of its motion to vacate a default judgment that Delex Inc., a New York corporation, obtained against it. SCAC claims that service of process was improper because Delex did not follow the Hague Convention's required procedures. Because the Russian Federation's refusal to serve Russians on behalf of American litigants relieves Delex Inc. of the responsibility of complying with the Hague Convention, we affirm.

## FACTS

Delex alleges that it contracted with SCAC to lease office and warehouse storage space from a third party landlord in Seattle on SCAC's behalf. Delex entered into a three-year lease of the property but received no payment from SCAC at any time. Within the first year, Delex surrendered the premises to the landlord.

Delex filed a complaint against SCAC for breach of contract in King County Superior Court in March 2012. Delex served the summons and complaint on SCAC in Moscow, Russia, through registered mail and personally on the head of SCAC's Foreign Activity Legal Support Department in April 2012. SCAC never responded.

In August 2012, Delex moved for an order of default and default judgment. The court granted Delex's motion, a $327,378.49 judgment against SCAC. A representative of Delex e-mailed SCAC a copy of the default judgment later that month. Again, SCAC never responded or satisfied any of the judgment.

In January 2015, the court issued a writ of execution to the King County sheriff to seize SCAC's property, located in SeaTac and valued at approximately $420,000. According to SCAC, the property included "highly sensitive U.S. aircraft technology and components."[1] SCAC appeared specially to move for relief from the default judgment and to stay the sheriff's sale. The trial court denied SCAC's motion. SCAC appeals.

## ANALYSIS

SCAC argues that the trial court erred by refusing to vacate the default judgment entered against it. SCAC maintains that service was improper under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (hereinafter Hague Convention). Delex responds that the United States Department of State (State Department) and several federal courts have excused American litigants from attempting service through Russia's "Central Authority" because the Central Authority no longer serves Russians on behalf of Americans. We agree with Delex.

Under CR 60(b)(5), the court may relieve a party from a final judgment if that judgment is void. A default judgment against a party is void if the court did not have personal jurisdiction over that party. Ahten v. Barnes, 158 Wn. App. 343, 349, 242 P.3d 35 (2010). A court does not have personal jurisdiction over a party if service of the

---

[1] Clerk's Papers at 89.

summons and complaint was improper. Ahten, 158 Wn. App. at 349.

Under Washington law, the plaintiff has the initial burden to show that service was sufficient. Scanlan v. Townsend, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014). The plaintiff can "establish service of process with an affidavit of service from a process server." Scanlan, 181 Wn.2d at 847. Then it is the defendant's burden to show by clear and convincing evidence that service was improper. Scanlan, 181 Wn.2d at 847. We review de novo "the trial court's denial of a motion to vacate a final order for lack of jurisdiction." ShareBuilder Sec. Corp. v. Hoang, 137 Wn. App. 330, 334, 153 P.3d 222 (2007).

Washington's CR 4(i)(1) offers parties several options for serving foreign litigants. Service on a party in a foreign country is sufficient if it is made

> (C) upon an individual, by delivery to the party personally, and upon a corporation or partnership or association, by delivery to an officer, a managing or general agent; or (D) by any form of mail, requiring a signed receipt, to be addressed and mailed to the party to be served; or (E) pursuant to the means and terms of any applicable treaty or convention . . . The method for service of process in a foreign country must comply with applicable treaties, if any, and must be reasonably calculated, under all the circumstances, to give actual notice.

Delex served SCAC through the Russian Postal Service's registered mail and received confirmation of delivery from the Postal Service. This manner of service complies with CR 4(i)(1)(D). Delex also personally served the head of SCAC's Foreign Activity Legal Support Department. Assuming that this department head is an officer or a managing or general agent of SCAC, this method of service satisfies CR 4(i)(C). Delex filed an affidavit describing both service methods.

### The Hague Convention

SCAC does not challenge the sufficiency of either method of service under

Washington law. Instead, SCAC argues that service was improper because Delex did not comply with the Hague Convention. The Hague Convention is a "multi-national treaty that governs service of summons on persons in signatory foreign countries." Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1237 (Fed. Cir. 2010). The Russian Federation and the United States of America are both signatories.[2] SCAC notes that since the United States is a party to the treaty, the supremacy clause, United States Constitution article VI, mandates compliance with its terms. See Broad v. Mannesmann Anlagenbau, AG, 141 Wn.2d 670, 674-77, 10 P.3d 371 (2000). The Hague Convention requires each member state to designate a Central Authority, which will serve litigants within its own country. Hague Convention art. 2. The Hague Convention provides other ways to serve litigants, including through postal channels and personal service, but it allows member states to object to those other methods. Hague Convention art. 10. Russia objected to those other methods.[3]

Ordinarily, the Hague Convention "applies 'where there is occasion to transmit a judicial or extrajudicial document for service abroad.'" Broad, 141 Wn.2d at 675 (quoting Hague Convention art. 1). However, a dispute arose in 2003 between Russia and the United States over fees charged by the United States.[4] Russia declared in 2004 that it

---

[2] Hague Convention, 658 U.N.T.S. at 182; Accession of Russian Federation to Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 2165 U.N.T.S. 200, 204,https://treaties.un.org/doc/Publication/UNTS/Volume%202165/v2165.pdf; see also Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters: Members of the Organisation, HAGUE CONF. PRIV. INT'L L., https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

[3] Declarations of Russian Federation to Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 2293 U.N.T.S. 114, 115, https://treaties.un.org/doc/Publication/UNTS/Volume%202293/v2293.pdf (hereinafter Russian Federation Declaration); see also Declarations Reservations, HAGUE CONF. PRIV. INT'L L., https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=418&disp=resdn.

[4] Legal Considerations: International Judicial Assistance: Russia, U.S. DEP'T OF STATE, http://travel.state.gov/content/travel/en/legal-considerations/judicial/country/russia-federation.html (last updated Nov. 15, 2013) (follow "Service of Process" hyperlink).

will "not apply the Convention" to states that charge for the services rendered by the state.[5] A State Department circular currently informs litigants that service through Russia's Central Authority is not available:

In July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil or commercial matters. . . . [R]equests sent directly by litigants to the Russian Central Authority under the Hague Service Convention are returned unexecuted.

. . . .

Because of the Russian suspension of executing U.S. judicial assistance requests in civil and commercial matters, we advise litigants that they may wish to seek guidance from legal counsel in the Russian Federation regarding alternative methods of service. The United States has informed the Russian Federation on numerous occasions that in the absence of a direct channel for U.S. judicial assistance requests, U.S. courts and litigants will explore other methods to effect service of process.[6]

The State Department includes a disclaimer with its circular, noting that it is not taking a position on any pending litigation or expressing an opinion on the law.[7]

In Nuance, the Federal Circuit held that it was error for a district court to require a party, Nuance, to serve a Russian litigant, Abbyy Production, through the Hague Convention procedures. 626 F.3d at 1238. The court relied on the State Department's circular, other federal cases, and a declaration from an expert in international service of process to determine that Russia had categorically refused to serve litigants on behalf of Americans. Nuance, 626 F.3d at 1238. The court rejected the argument that Nuance had to attempt service through the Central Authority before seeking alternatives. Nuance, 626 F.3d at 1238. The court authorized Nuance to serve one of Abbyy Production's

---

[5] Russian Federation Declaration, 2293 U.N.T.S. at 115 (declaration VIII). Russia specifically excludes from this declaration foreign states whose costs are proper under the Hague Convention, article 12(2)(a) and (b). The United States argues that its fees are proper under those paragraphs. See Legal Considerations, supra (follow "Service of Process" hyperlink). This is the basis of the dispute.

[6] Legal Considerations, supra (follow "Service of Process" hyperlink).

[7] Legal Considerations, supra.

corporate affiliates within California. Nuance, 626 F.3d at 1240.

Several other federal courts have held that service on Russian parties by American litigants was proper even though it did not comport with the Hague Convention. In re Cyphermint, Inc., 445 B.R. 11, 15-17 (Bankr. D. Mass. 2011) (holding that alternative service was "sufficient and proper" because service under the Hague Convention had "been rendered impossible due to the unilateral action of the Russian Federation Central Authority"); Microsoft Corp. v. John Does 1-18, No. 1:13cv139, 2014 WL 1338677, at *3-4 (E.D. Va. Apr. 2, 2014) (court order) (allowing service on Russian litigant through international courier and registered mail). Recently, a federal magistrate judge in Nevada allowed a party to serve Russian litigants through e-mail and international express mail. Smith v. Wolf Performance Ammunition, No. 2:13-cv-02223-JCM-NJK, 2015 WL 315891, at *3 (D. Nev. Jan. 23, 2015) (court order) (authorizing service on Russian litigants through e-mail and international express mail). It does not appear that any court has required a party to serve Russian litigants through the Central Authority since the dispute between Russia and the United States began.

We agree with the federal courts that the Russian Central Authority's refusal to serve Russian litigants on behalf of American litigants renders service under the Hague Convention impossible for a plaintiff like Delex. Therefore, Delex must be allowed to serve SCAC through alternative means.

SCAC argues that these federal decisions are inapplicable because "no lower federal court has released a State court from the strictures of the Supremacy Clause of the Constitution."[8] Delex, on the other hand, claims that these lower court decisions are

---

[8] Appellant's Reply Br. at 14.

binding on this court. Neither is correct. While the supremacy clause requires this court to follow the United States Supreme Court's interpretations of federal law, it does not prevent us from interpreting federal law altogether. See S.S. v. Alexander, 143 Wn. App. 75, 92, 177 P.3d 724 (2008). Lower federal court decisions that interpret federal law are not binding on this court but are "entitled to great weight." Home Ins. Co. of N.Y. v. N. Pac. Ry. Co., 18 Wn.2d 798, 808, 140 P.2d 507 (1943).

SCAC insists that we cannot allow Delex to serve Russian litigants outside the limited procedures of the Hague Convention because it would be altering the United States position on the treaty, which we lack the authority to do. We reject this argument. We are not abrogating the treaty.

By holding that Delex properly served SCAC, we, like several federal courts, are doing no more than what the United States has explicitly warned the Russian Federation that the United States courts would do. SCAC argues that, because of the supremacy clause, state courts do not have the same authority as federal courts have to make this decision. This argument confuses state law with state courts. In this decision, we, like federal courts, are interpreting a federal treaty, not resolving a conflict between state and federal law.

### Charlton v. Kelly

SCAC, relying primarily on the century-old case Charlton v. Kelly, argues that United States citizens must comply with the Hague Convention despite Russia's refusal to do so. 229 U.S. 447, 473, 33 S. Ct. 945, 57 L. Ed. 1274 (1913). There, an American court had to decide whether to extradite an American citizen to Italy in light of Italy's refusal to extradite Italians to the United States. Charlton, 229 U.S. at 469-72. The Court

reviewed correspondence between the State Department and the Italian charge d'affaires about the particular case. Charlton, 229 U.S. at 469-72. According to the United States, Italy's refusal violated its bilateral extradition treaty with the United States. Charlton, 229 U.S. at 472-73. The Court held that breach rendered the treaty "voidable, not void." Charlton, 229 U.S. at 473. The United States chose not to void the treaty but, instead, appeared to waive its objections to Italy's breach. Charlton, 229 U.S. at 473.

Charlton does not control, as seen in the many federal court decisions that have tackled this question without reference to Charlton. See, e.g., Nuance, 626 F.3d 1222; Microsoft, 2014 WL 1338677; Smith, 2015 WL 315891; Cyphermint, 445 B.R. 11. The Court recognized in Charlton that the United States had to consider how its response to Italy's interpretation of the treaty might impact the United States' treaties with other countries. 229 U.S. at 473. Similarly, withdrawing from the Hague Convention as a response by the United States to the Russian Central Authority's refusal to effect service on behalf of American litigants would have far-reaching consequences.

The Hague Convention is a multilateral treaty. There is no mechanism in the Hague Convention for the United States to abrogate the treaty with respect to Russia but leave it in force with the other signatories. The United States' decision to honor its bilateral treaty obligations in the face of a breach by the only other party is not comparable to the United States' decision not to withdraw from the Hague Convention, which governs its foreign service of process with more than 60 nations, based on the conduct of 1 nation.

Further, Delex's actions here are consistent with the State Department's circular. Refusing to extradite the American in Charlton would have gone against the State Department's clearly articulated position. 229 U.S. at 471-72. Here, the State

8

Department's stance is different. The State Department lists the Russian Federation as a party to the Hague Convention in its "Multilateral Treaties in Force as of January 1, 2013."[9] But, when offering information about the Russian Federation specifically, the State Department warns that Russia's Central Authority will not serve Russians on behalf of American litigants.[10] It stated, "The United States has informed the Russian Federation on numerous occasions that in the absence of a direct channel for U.S. judicial assistance requests, U.S. courts and litigants will explore other methods to effect service of process."[11] That is exactly what Delex did.

## Article 15—Default Judgment

SCAC also contends that, even if it is true that the Russian Central Authority does not process requests for American litigants, Delex could, and should, have attempted service through the Central Authority and then sought a default judgment through article 15 of the Hague Convention, which SCAC refers to as a "jurisdictional safety valve."[12] The Hague Convention allows for entry of default judgment under certain conditions:

> [T]he judge . . . may give judgment even if no certificate of service or delivery has been received if all of the following conditions are fulfilled –
> a) the document was transmitted by one of the methods provided for in this Convention,
> b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
> c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Hague Convention art. 15.

---

[9] U.S. DEP'T OF STATE, TREATIES IN FORCE 410, http://www.state.gov/documents/organization/218912.pdf.
[10] Legal Considerations, supra (follow "Service of Process" hyperlink).
[11] Legal Considerations, supra (follow "Service of Process" hyperlink).
[12] Br. of Appellant at 22.

We do not require Delex to pursue a default judgment through this procedure for three reasons. First, requiring Delex to send documents to Russia's Central Authority that the Russian Authority would not serve on SCAC would be a waste of Delex's resources. Second, it would cause unnecessary delay. Third, and most importantly, it would not be calculated to give SCAC actual notice of the pending suit.

In this case, SCAC does not dispute that it had actual notice of the suit based on Delex's other service. But, had Delex relied solely on the Central Authority to serve SCAC and then taken the default judgment after six months as permitted under article 15, SCAC would never have received notice of the suit. Therefore, we reject SCAC's argument that Delex must have attempted to serve SCAC through the Central Authority even though it knew that the Central Authority would not have served SCAC.

### Prior Court Authorization

SCAC contends next that, even if service outside the Hague Convention procedures may sometimes be proper, Delex would have had to receive prior approval from the trial court before attempting it. SCAC supports this argument with citations to federal cases where a party sought approval from the court under Federal Rule of Civil Procedure (FRCP) 4(f)(3). See, e.g., Smith, 2015 WL 315891, at *3 (court authorized plaintiff to serve defendants under FRCP 4(f)(3)).

The requirement of prior approval in those cases comes from the Federal Rules of Civil Procedure, which do not apply here. FRCP 4(f)(2)(C)(i) allows personal service on a foreign individual. However, FRCP 4(h)(2), which governs foreign service on foreign corporations, specifically prohibits litigants from effecting personal service on a foreign corporation under FRCP 4(f)(2)(C)(i). So, in order to serve Russian litigants, some of the

plaintiffs resorted to FRCP 4(f)(3), which allows for service "by other means not prohibited by international agreement, as the court orders." See, e.g., Smith, 2015 WL 315891, at *2.

By contrast, federal courts have not required prior approval of alternative service methods from plaintiffs when the federal rules did not require it. See, e.g., Microsoft, 2014 WL 1338677, at *3-4 (holding that service on a Russian *individual* was proper under FRCP 4(f)(2)(A) and (C)(i) without requiring prior authorization from the court).

There was no reason for Delex to seek prior approval under the Washington court rules. Although CR 4(i)(1)(G) authorizes service "as directed by order of the court," there is no indication that Delex is relying, or needs to rely, on that manner of service. Delex's service was proper under CR 4(i)(1)(C) and (D), which do not require prior court approval.

In short, we hold that Delex properly served SCAC.

## Attorney Fees

Delex seeks attorney fees pursuant to RAP 18.1(a). We decline its request.

Attorney fees are not available absent "a contract, statute, or recognized ground of equity." Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 142-43, 937 P.2d 154, 943 P.2d 1358 (1997). To "deter plaintiffs from seeking relief prior to a trial on the merits," an award of attorney fees is often available on equitable grounds after a court has dissolved "a wrongfully issued injunction or restraining order." Ino Ino, Inc., 132 Wn.2d at 143.

Delex argues that SCAC "obtained a temporary injunction of a scheduled [s]heriff's sale based on improper legal arguments."[13] It is mistaken. The only stay SCAC received was a temporary stay from this court pending the outcome of its emergency motion for a

---

[13] Br. of Resp't at 20.

stay during the appeal.[14] That stay lasted three days.[15] After a commissioner of this court denied SCAC's emergency motion, SCAC deposited a $475,000 supersedeas bond. The parties then agreed to quash the writ of execution, which was the basis for the sheriff's sale.

Delex claims that this temporary stay of the sheriff's sale was tantamount to a temporary restraining order but cites no authority for this position. Although SCAC does not prevail on its legal arguments, Delex has not explained how the legal arguments were improper. Delex is not entitled to attorney fees. Additionally, SCAC sought relief from the sheriff's sale in order to have a trial on the merits. Here, attorney fees would not serve the same equitable purpose as they do when awarded against plaintiffs who seek relief before trial but do not prevail on the merits.

We affirm the trial court's denial of SCAC's motion to vacate the default judgment.

_Trickey, A.C.J._

WE CONCUR:

_Spearman, J._                    _Becker, J._

---

[14] Comm'r's Ruling Denying Emergency Mot. for Stay & Lifting Temporary Stay, at 3 (Wash. Ct. App. Feb. 27, 2015).

[15] Comm'r's Ruling at 8.