**FMAC LOAN RECEIVABLES,**
**et al., Plaintiffs,**

**v.**

**Owais A. DAGRA, Defendant.**

**No. CIV.A.3:04 CV 701.**

United States District Court,
E.D. Virginia,
Richmond Division.

June 10, 2005.

**532**

Alan Durrum Wingfield, Troutman Sanders LLP, Richmond, VA, for Plaintiffs.

Alan David Strasser, Kutak Rock LLP, Washington, DC, Kevin Robert Huennekens, Loc Pfeiffer, Peter John Barrett, Kutak Rock LLP, Richmond, VA, for Defendant.

### MEMORANDUM OPINION

HUDSON, District Judge.

THIS MATTER is before the Court on Defendant Owais A. Dagra's ("Defendant" or "Dagra") Motion to Quash Service of Process, and Plaintiff FMAC Loan Receivables Trust's ("Plaintiff" or "FMAC") Motion for an Order Approving Service. Both parties have filed memoranda of law in support of their respective positions, and a hearing was held on the matter on June 1, 2005. For the reasons set forth in this opinion and on the record, the Motion to Quash Service is denied, and the Motion for an Order Approving Service is granted.

Through this Motion to Quash, Defendant is challenging the jurisdiction of the Court over this case due to lack of sufficient service. Dagra is a businessman who previously owned several businesses in Virginia, but is currently residing somewhere in Pakistan. FMAC is seeking to locate him in order to hold him accountable for more than $80 million in unpaid loans that he obtained directly and indirectly through his many businesses. FMAC alleges that Dagra engaged in an intricate pattern of fraudulent activity that induced it to make these loans. Dagra invested the loaned money into his businesses, and then deposited their profits into his personal accounts. These businesses were ultimately bankrupted, and upon being removed from management by the United States Bankruptcy Court for the Eastern District of Virginia, Dagra left the country with more than $10 million according to the Complaint. Dagra's exact whereabouts are currently unknown. Despite its best efforts, FMAC has only been able to learn that he may be residing somewhere in Karachi, Pakistan. For failing to locate him and serve him properly, Dagra is seeking the dismissal of this case for failure to properly effect service.

This Motion is only one of the many challenges that Dagra has made to the progression of this case. Since removing this case from the Circuit Court of Hanover County, he has filed two Motions to Quash, a Motion for Leave to Serve Discovery in Advance of Rule 26(d) and to Shorten the Time for Plaintiffs to Respond to the Production of Documents, a Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6), a Motion to Dismiss for Failure to Plead Fraud with Particularity under Rule 9(b), and a Motion to Dismiss under Rule 41(b) for want of prosecution. Ruling on these many motions are pendant on the Court first determining the issue of jurisdiction.

In Dagra's first Motion to Dismiss for lack of service, Dagra argued that this Court, to which *he* removed the case, did not have personal jurisdiction.[1] Dagra alleged that he had not been served and since he resides outside the United States, was consequently beyond the reach of conventional process service. This Motion, however, was denied as premature since under the Hague Convention, FMAC is entitled to a reasonable opportunity to effect valid service. *See Vorhees v. Fischer & Krecke,* 697 F.2d 574, 576 (4th Cir.1983) (*citing Jim Fox Enterprises, Inc. v. Air France,* 664 F.2d 63, 65 (5th Cir.1981)).

In the Motion to Quash currently before the Court, Dagra argues that service is lacking because FMAC did not effectuate service at his current address in accordance with Federal Rules of Civil Procedure 4(f) ("Rule 4(f)"). Dagra admits that the address used for service was once his address, but is no longer. Dagra contends that if FMAC had used due diligence it would have discovered his true address and been able to properly serve him.

In response, FMAC concedes that it has not been able to obtain a current address for Dagra, but argues that it should not be penalized because it has diligently attempted to perfect service. To date, FMAC has pursued numerous avenues to obtain Dagra's correct address for service. It first contacted all of Dagra's creditors involved in his bankruptcy case, but was told that it was their understanding that he was residing somewhere in Pakistan. FMAC then issued subpoenas to individuals it believed to have Dagra's address, including the attorney who represented him in past criminal proceedings, and the attorney who represented him in bankruptcy proceedings. Both counsel represented that they did not have this information. FMAC also subpoenaed "GPM," the successor in interest to Dagra's former businesses. This effort proved to be fruitless as well, in that the address GPM had for Dagra was no longer valid. FMAC then used Lexis–Nexis to search public records, but once again was only able to identify old local addresses. A search of corporate records maintained by the State Corporation Commission of Virginia yielded the same result.

FMAC's first break in the case came from using the Internet search engine, Google. Using Google, FMAC determined that Dagra was conducting business in Karachi, Pakistan. This led FMAC to contact the Consulate General in Kirachi, from whom he obtained what finally appeared to be a valid address.

Using this address, FMAC served Dagra through the Secretary of the Commonwealth of Virginia pursuant to Virginia Code § 8.01–329. FMAC argues that this form of service is appropriate under Article 10(a) of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), since it allows for direct transmission of judicial documents to persons abroad by mail if the state of destination does not object to mail service, which it argues is the case in Pakistan. November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. Moreover, FMAC argues that this form of service complies with Rule 4. However, FMAC's Complaint was returned in the mail. It appears that the address was no longer valid. Thus, despite using due diligence to ascertain Dagra's exact whereabouts, he has remained elusive.

FMAC argues that despite its best efforts to locate Dagra, it has little to no options left to obtain service, and is therefore asking for the Court's assistance. Under Rule 4(c)(3), the Court has the power to approve any method of service that is "reasonably calculated to give notice" to Dagra. FMAC moves the Court to order service on Dagra's attorney with the direction that such counsel shall communicate such notice to Dagra using whatever means established by Dagra for communicating with counsel.

 As applied to this case, Rule 4(f) allows for service upon individuals in a foreign country:

> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague

---

1. If this case had remained in state court, FMAC could have effected proper service by serving the Secretary of the Commonwealth. *See* Va.Code Ann. § 8.01–329; *see also* Footnote 3.

Convention on the Service Abroad of Judicial and Extrajudicial Documents; or... (3) by other means not prohibited by international agreement as may be directed by the court.

After having attempted to comply with Rule 4(f)(1), FMAC now seeks service under Rule 4(f)(3). Rule 4(f) does not denote any hierarchy or preference of one method of service over another. *See Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 (9th Cir. 2002). Additionally, "no language in Rule 4(f)(1) or 4(f)(2) indicates their primacy." *Id.* However, a district court, in exercising the discretionary power permitted by Rule 4(f)(3), may require the plaintiff to show that they have "reasonably attempted to effectuate service on defendant and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile." *Ryan v. Brunswick,* 2002 WL 1628933, *2, 2002 U.S. Dist. LEXIS 13837, *7–8 (W.D.N.Y.2002).[2]

■ In this case, FMAC has earnestly tried to serve Dagra and to perfect service in compliance with Rule 4(f)(1) and the Hague Convention. FMAC has explored every option it believed to be viable to obtain Dagra's address, but to no avail. Contacting Dagra's prior legal representative, business affiliates, and the Consulate General in Karachi, Pakistan have failed to reveal Dagra's current whereabouts. Researching business records and documents, and using on-line research resources was also unavailing. While Dagra argues that FMAC should be required to do more to obtain his current address, upon questioning by the Court, he could not define what additional steps should be required. And a party "need not have attempted every permissible means of service of process before petitioning the court for alternative relief." *Rio Props., Inc.,* 284 F.3d at 1016. Thus, after using due diligence to locate Dagra, FMAC has satisfied the threshold requirement for invoking the Court's authority

under Rule 4(f)(3) to request alternative methods of service.

■ In order to implement Rule 4(f)(3) the means of service must be 1) directed by the Court, and 2) not prohibited by international agreement, including the Hague Convention referenced in Rule 4(f)(1). Pakistan is a party to the Hague Convention. However, the Hague Convention does not apply to this case since "the only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service." *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 707, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988) ("Where service on a domestic agent is valid and complete under both [governing authority] and the Due Process Clause, our inquiry ends and the Convention has no further implications"). Since service is being requested on defense counsel, whose office is located in Richmond, Virginia, the Hague Convention does not apply. Thus, the means of service requested does not conflict with the requirements of Rule 4(f)(3).

Service under Rule 4(f)(3) must also comply with Constitutional notions of due process. Specifically, any method of service ordered by the Court must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford then an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

■ Based on the facts of this case, it is clear that Dagra would be given proper notice if service was effectuated on his attorney. The numerous motions filed by Dagra's attorney, Mr. William R. Baldwin, III of Cherry, Seymour & Hundley, P.C., make it abundantly clear that Dagra has been in constant communications with his attorney. While Mr. Baldwin argued to the Court that he has purposely remained ignorant of Dagra's contact information, including his ad-

---

2. Pursuant to Local Rule 36, the United States Court of Appeals for the Fourth Circuit disfavors citation to unpublished dispositions. *See* Loc. R. 36( c ) (4th Cir.2003). However, the *Ryan v. Brunswick* disposition is on-point with the cur-

rent case and stands for the proposition that some district courts have imposed the additional requirement of proving diligent attempts to achieve service before requesting assistance under Rule 4(f)(3).

dress, phone number, and e-mail address, it is evident that he does have some means of communicating with his client. After all, the Virginia Rules of Professional Conduct require him to keep his client informed about the status of his case. Va. Rule of Prof'l Conduct 1.4. And Mr. Baldwin would surely not have filed these numerous motions unless he was specifically authorized by Dagra to act on his behalf. Va. Rule of Prof'l Conduct 1.2(d). Thus, it would be reasonable to expect Mr. Baldwin to communicate with his elusive client and keep him appraised of proceedings in the case against him, if served with process using whatever means he currently utilizes for communications.

It is also reasonable to infer in light of the numerous challenges that Dagra has made in his defense that he already has sufficient notice of the case. Dagra has not only filed two motions to dismiss based on deficient service, but has also filed several motions directly attacking the substance of the Complaint. For example, he is directly challenging the sufficiency of the fraud and constructive fraud claims in his Motion to Dismiss under Rule 12(b)(6). Dagra is also challenging the sufficiency of the fraud claims in a separate motion under Rule 9(b). The Court must assume that consistent with the Virginia Rules of Professional Conduct, these motions were filed with Dagra's express permission. In considering these motions, it appears that Dagra is trying to play a game of cat and mouse with the Court. While taunting the Court with his arguments regarding lack of jurisdiction, he is, at the same time, seeking to use the authority of the Court to dismiss his case on substantive grounds. With such notice, Dagra's contention that this Court is without jurisdiction is untenable.[3] However, in an abundance of caution and to ensure Dagra's complete knowledge of the allegations against him, it would be appropriate for Dagra's counsel to be served with process.

Implementing Rule 4(f) and allowing service upon Dagra's counsel is neither a new nor extraordinary means of effecting service of process. *See Forum Fin. Group, LLC v. President & Fellows of Harvard College,* 199 F.R.D. 22, 23 (D.Me.2001) ("Nothing in Rule 4(f) or its advisory committee notes indicates that court-directed service under Rule 4(f)(3) is "extraordinary relief").[4] Several courts have allowed service on the defendant's counsel when service on the defendant has not been possible or the defendant has evaded service. For example, in *Forum Financial Group, LLC,* the plaintiffs asked the Court for assistance in obtaining service on an American living abroad in Russia after their attempts to located him proved to be unsuccessful. The United States Court for the Middle District of Maine determined that ordering service upon the defendant's New York counsel would not intrude on their attorney-client relationship and likely fulfill due process requirements. *Id.* at 24. *See, e.g. Levin v. Ruby Trading Corp.,* 248 F.Supp. 537 (S.D.N.Y.1965) (when prior service attempts failed on Canadian defendant, the Court approved service by ordinary mail upon defendant and defendant's attorney).[5]

Moreover, Courts around the country have utilized the authority of Rule 4(f) to allow for service in other non-traditional means. *See Int'l Controls Corp. v. Vesco,* 593 F.2d 166 (2nd Cir.1979) (approving service by mail to last known address); *SEC v. Tome,* 833 F.2d 1086 (2nd Cir.1987) (condoning service by publication in the Int'l Herald Tribune); *In re Int'l Telemedia Assoc.,* 245 B.R. 713 (Bankr.N.D.Ga.2000) (authorizing service by facsimile, electronic mail, and mail to the defendant's last known address); *Smith v. Islamic Emirate of Afghanistan,* Nos., 2001 WL 1658211, 2001 U.S. Dist. LEXIS 21712 (S.D.N.Y.2001) (authorizing service by publication upon Osama bin Laden and the al-Qaeda organization); *New Eng. Merch. Nat'l*

---

**3.** As FMAC argued at the hearing, notice is all that is required to invoke the Curing Statute in Virginia and if this case has remained in state court, adequate service would have been found. Va.Code Ann. § 8.01–288. If this Court had found that it did not have jurisdiction of the case, remand rather than dismissal would have been an appropriate remedy. *See* 28 U.S.C. § 1447(c).

**4.** While this case does not have precedential value, it bears considerable guidance to the Court.

**5.** While of no precedential value, this case is yet another example of the Court allowing service on the defendant's counsel.

**536**

*Bank v. Iran Power Generation & Transmission Co.,* 495 F.Supp. 73 (S.D.N.Y.1980) (authorizing service by telex to Iranian defendants); *Rio,* 284 F.3d 1007 (9th Cir.2002) (authorizing service through electronic mail).[6]

In sum, Dagra cannot skirt the jurisdiction of this Court. From the facts of this case, it is obvious that Dagra is well aware of the current suit, but has purposely acted to conceal his whereabouts. His many motions seeking to dismiss the case on substantive non-jurisdictional grounds are evidence that he has some form of notice. To ensure his complete knowledge of the claims pending against him, this Court Orders Plaintiff FMAC Loan Receivables Trust to serve Defendant Owais A. Dagra's attorney, Mr. William R. Baldwin, III, with service of process pursuant to Rule 4(f)(3). Requiring service on defense counsel is reasonably calculated to apprise defendant of the pendency of this action and afford him an opportunity to respond. *See Mullane,* 339 U.S. at 314, 70 S.Ct. 652. Thus, Dagra's Motion to Quash is denied, and FMAC's Motion to Order Approving Service is granted.

### ORDER

**(Denying Plaintiff's Motion to Quash Jurisdiction and Granting Plaintiff's Motion for an Order Approving Service)**

THIS MATTER is before the Court on Defendant Owais A. Dagra's ("Defendant") Motion to Quash Service of Process and Plaintiff FMAC Loan Receivables Trust's ("Plainitff") Motion for an Order Approving Service. For the reasons set forth in the accompanying Memorandum Opinion and on the record at a hearing held on June 1, 2005, Defendant's Motion to Quash Service is hereby DENIED, and Plaintiff's Motion for an Order Approving Service is GRANTED. Plaintiff is ORDERED to serve Defendant's counsel, Mr. William R. Baldwin, III of Cherry, Seymour & Hundley, P.C., with process.

It is so ORDERED.

---

6. The unpublished cases cited are strictly for guidance purposes.