2012 CO 29

**In re Linda WILLHITE and Rex Willhite, Plaintiffs**

v.

**Paulo RODRIGUEZ–CERA and Juan Torres, Defendants.**

**No. 11SA250.**

Supreme Court of Colorado, En Banc.

April 23, 2012.

Bendinelli Law Firm, P.C., Marco F. Bendinelli, Blaine L. Milne, Westminster, Colorado, Attorneys for Plaintiff Rex Willhite.

Senter Golfarb & Rice, L.L.C., Arthur J. Kutzer, Joel A. Palmer, Denver, Colorado, Attorneys for Defendant Paulo Rodriguez–Cera.

No Appearance by or on behalf of Linda Willhite and Juan Torres.

Justice BOATRIGHT delivered the Opinion of the Court.

¶1 In this original proceeding under C.A.R. 21, we review the trial court's order quashing service on Paulo Rodriguez–Cera, who resides in Mexico, but was served by substituted service in Colorado. After previously granting substituted service under C.R.C.P. 4(f), the trial court determined that C.R.C.P. 4(d) mandated that service on a defendant located in a foreign country be made according to international agreement, if any. Because Mexico and the United States

are both parties to the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), 20 U.S.T. 361, the trial court concluded that Plaintiff Rex Willhite must serve Rodriguez–Cera via the Hague Service Convention. As a result, the trial court quashed the substituted service.

¶ 2 We hold that C.R.C.P. 4(d) does not establish service according to international agreement as the exclusive means of serving a defendant located in a foreign country. Under C.R.C.P. 4(d), service according to international agreement is just one method for effecting service in a foreign country. Further, C.R.C.P. 4(d) does not require that service on a defendant located in a foreign country actually occur abroad and nothing in Rule 4(d) prohibits a plaintiff from serving a defendant within the United States if otherwise authorized. We hold that substituted service under C.R.C.P. 4(f) provides a valid alternative to service abroad. We acknowledge that the Hague Service Convention is implicated when the law of the forum state requires the transmittal of documents abroad in order to effectuate service. However, we conclude that the transmittal of documents abroad is not required to effectuate service under C.R.C.P. 4(f) and therefore the Hague Service Convention is not implicated by substituted service within the United States under Colorado's Rules of Civil Procedure. We make the rule absolute and remand to the trial court for further proceedings consistent with this opinion.

## I. Factual Background and Procedural History

¶ 3 In his personal injury complaint, Willhite alleged that Rodriguez–Cera rear-ended the vehicle Willhite was driving.[1] Willhite filed suit against Rodriguez–Cera and Juan Torres, the owner of the vehicle Rodriguez–Cera was driving, for damages for the injuries he suffered in the accident. Willhite attempted to serve Rodriguez–Cera personally in Colorado but was unable to locate him. While attempting service, the process server learned that Rodriguez–Cera was residing in Mexico. The process server also learned that Rodriguez–Cera was in regular contact with his sister, Lydia Torres–Bravo, who was married to co-defendant Juan Torres and was living in Colorado.

¶ 4 After learning that Rodriguez–Cera was living in Mexico, Willhite filed a motion for substituted service pursuant to C.R.C.P. 4(f), asking the trial court to permit substituted service on Rodriguez–Cera's sister. Unconvinced that Willhite had made sufficient effort to serve Rodriguez–Cera personally as required by C.R.C.P. 4(f), the trial court denied the motion. The court, however, granted Willhite's motion to conduct early discovery to assist in determining the location of Rodriguez–Cera's workplace or residence. In the course of early discovery, Willhite deposed Ms. Torres–Bravo and learned that Rodriguez–Cera was living with their parents in a small town in Chihuahua, Mexico and was in regular contact with his sister through her phone calls to their parents. Ms. Torres–Bravo could not provide an address for her parents' home and believed that the homes in that small town did not have numbers. Willhite filed a renewed motion for substituted service. The trial court denied the motion, noting that Willhite had not described any diligent efforts to follow the international service requirements of C.R.C.P. 4(d), and directed Willhite to proceed with service on Rodriguez–Cera pursuant to the Hague Service Convention.

¶ 5 Six months later, Willhite filed a second renewed motion for substituted service. He reported that he undertook efforts to serve Rodriguez–Cera through the Mexican central authority, in accordance with the Hague Service Convention, but was hindered by numerous obstacles and bureaucratic challenges.[2]

---

1. Willhite and his wife, who was a passenger in the vehicle Willhite was driving, filed suit together. His wife is no longer a party to this action.

2. According to Willhite, he was hindered by the Mexican central authority's refusal to communicate with Fed–Ex; Mexico's requirement that all documents be translated by a translator licensed in Mexico and the delay and high fees associated with those translations; the need for a Mexican court with jurisdiction where the Mexican national resides to approve service by the Mexican central authority; and a shortage of local counsel available to seek approval from that court due to

The trial court granted Willhite's second renewed motion for substituted service and authorized substituted service pursuant to C.R.C.P. 4(f).

¶ 6 The next day, Willhite served Rodriguez–Cera by substituted service on his sister, Ms. Torres–Bravo. By special appearance, Rodriguez–Cera filed a motion to quash the substituted service. He argued that C.R.C.P. 4(d) mandates adherence to international treaty, in this case, the Hague Service Convention. He also argued that substituted service is not allowed when a plaintiff is obligated to serve a defendant outside the United States pursuant to C.R.C.P. 4(d). The trial court interpreted C.R.C.P. 4(d) to require a plaintiff to serve a defendant located in another country in accordance with international agreement and determined that, in the case of Mexico, that international agreement was the Hague Service Convention. The trial court ruled that Willhite must serve Rodriguez–Cera via the Hague Service Convention and granted the motion to quash.

¶ 7 Willhite filed a C.A.R. 21 petition seeking review of the trial court's order quashing service. We issued a rule to show cause to determine whether C.R.C.P. 4(d) mandates service by international agreement as the exclusive means of serving a defendant located in a foreign country and, if not, whether substituted service within the United States provides a valid alternative to service abroad.

## II. Jurisdiction

■■■ ¶ 8 C.A.R. 21 authorizes this court to review a trial court's order if a remedy on appeal would not be adequate. C.A.R 21(a)(1). An order quashing service is not a final order that is immediately appealable. *Hoen v. Dist. Court,* 159 Colo. 451, 455, 412 P.2d 428, 430 (1966) (holding that an order quashing service was not a final appealable order and was therefore proper for an original proceeding). But in this case, if Willhite is unable to serve Rodriguez–Cera in Mexico pursuant to the Hague Service Convention and cannot appeal the order quashing the substituted service, then his attempt to bring suit would be frustrated by procedure and not adjudicated on the merits. We conclude

that relief under C.A.R. 21 is appropriate in these circumstances.

## III. Standard of Review

■■■ ¶ 9 The United States Supreme Court is the final authority on matters of federal constitutional law, and we are bound by its interpretations of international treaties. *Am. Fed'n of Labor v. Reilly,* 113 Colo. 90, 96, 155 P.2d 145, 148 (1945); *see also* U.S. Const. art. VI, cl. 2 (Supremacy Clause). However, this court is the final authority on questions of Colorado law. We interpret our rules of civil procedure de novo and apply principles of statutory construction. *Garrigan v. Bowen,* 243 P.3d 231, 235 (Colo.2010). "Accordingly, we give effect to the express language of the rule, considering the rule as a whole and giving consistent effect to all of its parts." *Id.*

## IV. Analysis

¶ 10 This case raises questions regarding the possible methods of serving a defendant located in a foreign country. To resolve these questions in this case, which involves a defendant residing in a country that is party to the Hague Service Convention, we must examine the Hague Service Convention as well as Colorado's rules governing service of process.

¶ 11 The Hague Service Convention is a multilateral treaty addressing service of process in foreign countries. *See* 20 U.S.T. 361. Because the United States and Mexico are both parties to the Convention, it is of potential applicability to this case. *See id.* (United States); Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 2117 U.N.T.S. 318 (accession of Mexico entered into force June 1, 2000). We therefore begin by reviewing the scope of the Hague Service Convention. The United States Supreme Court has held that the Convention is implicated when the laws of the forum state require the transmittal of documents abroad in order to effectuate service. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 700, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988).

drug wars and violence against attorneys in the        area.

Because the applicability of the Hague Service Convention depends on the law of the forum state, we turn to Colorado's rules governing service of process.

¶ 12 C.R.C.P. 4(d) addresses process served in a foreign country. It provides for service according to international agreement as one method of serving a defendant in a foreign country. However, service according to international agreement is not the exclusive means of effecting service in a foreign country under C.R.C.P. 4(d). Moreover, C.R.C.P. 4(d) does not require that service on a defendant located in a foreign country actually occur abroad and nothing in Rule 4(d) prohibits a plaintiff from serving a defendant within the United States, if otherwise authorized. We conclude that substituted service under C.R.C.P. 4(f) provides a valid alternative to service abroad. Because C.R.C.P. 4(f) does not require the transmittal of documents abroad in order to effectuate service, the Hague Service Convention is not implicated. Accordingly, we make the rule absolute and remand to the trial court for further proceedings consistent with this opinion.

## A. The Scope of the Hague Service Convention

¶ 13 The Hague Service Convention is a multilateral treaty formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. *See Volkswagenwerk*, 486 U.S. at 698, 108 S.Ct. 2104 (describing the history of the treaty). It revised parts of the Hague Conventions on Civil Procedure of 1905 and 1954. The revision was intended "to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit." *Id.* To this end, the Convention requires each country to establish a central authority to receive requests for service of documents from litigants in other countries. 20 U.S.T. 361. Upon request, that central authority must serve the document in accordance with the internal law of its country, or by a method designated by the requester if it is compatible with the internal law. *Id.* A country may consent to other methods of service within its boundaries other than by request to the central

authority. *Id.* Mexico has objected to all alternative methods of service and only consents to requests to its central authority. 2117 U.N.T.S. 318. Accordingly, service via Mexico's central authority is the exclusive means of serving a defendant within Mexico if service is effectuated in Mexico.

¶ 14 Article 1 of the Hague Service Convention dictates that it "shall apply in all cases ... where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. at 361. In *Volkswagenwerk*, the United States Supreme Court considered whether substituted service within the United States was compatible with the Hague Service Convention. 486 U.S. at 696, 108 S.Ct. 2104. To determine the scope of the Convention, the Supreme Court construed the phrases "occasion to transmit" and "for service abroad." *Id.* at 700, 108 S.Ct. 2104. The Court noted that "[t]he Convention does not specify the circumstances in which there is 'occasion to transmit' a complaint 'for service abroad'" but "the term 'service of process' has a well-established technical meaning," which the Court described as "a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Id.* Because the Convention did not prescribe a standard by which to measure the legal sufficiency of the delivery of documents, the Supreme Court referred to the law of the forum state for that standard. *Id.*

¶ 15 The Court concluded that, if the forum state "defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." *Id.* However, after reviewing the negotiating history of the Convention, the Court distinguished the mere "delivery" of documents abroad from the transmission of documents "for service abroad." *Id.* at 700–01, 108 S.Ct. 2104. The Court found that the Convention applies "only when there is both transmission of a document ..., and service upon the person for whom it is intended." *Id.* at 701, 108 S.Ct. 2104. Thus, "the only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service." *Id.* at 707, 108 S.Ct. 2104. The

Court indicated that, "where service ... is valid and complete under both state law and the Due Process Clause, [the] inquiry ends and the Convention has no further implication." *Id.* Because the applicability of the Hague Service Convention is determined by the law of the forum state, we turn to Colorado's rules governing service of process.[3]

## B. C.R.C.P. 4(d) Does Not Mandate Service Abroad

■ ¶ 16 We begin with C.R.C.P. 4(d), which provides four methods for serving process in a foreign country. Rule 4(d) states, in pertinent part,

Process served in a foreign country shall be according to any internationally agreed means reasonably calculated to give notice, the law of the foreign country, or as directed by the foreign authority or the court if not otherwise prohibited by international agreement.

Notably, the Rule uses the phrase "in a foreign country" and does not use the phrase "on a defendant located in a foreign country." We conclude that, by its plain language, Rule 4(d) applies only to service that occurs in a foreign country and does not apply to service that occurs in the United States, even if the defendant upon whom service is effectuated is located abroad at the time.

■ ¶ 17 C.R.C.P. 4(d) goes on to state that process served in a foreign country "shall be according to" the means listed. The word "shall" connotes a mandatory requirement. *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986). Because the Rule provides that service in a foreign country "shall be" according to one of the methods provided, any method not listed in C.R.C.P. 4(d) is

implicitly prohibited. Rule 4(d) thus dictates the only means of effectuating service in a foreign country that are authorized by Colorado's Rules of Civil Procedure.

¶ 18 Finally, Rule 4(d) describes four methods of effecting service in a foreign country: (1) service in accordance with any internationally agreed means reasonably calculated to give notice; (2) service in accordance with the law of the foreign country; (3) service as directed by the foreign authority if not otherwise prohibited by international agreement; or (4) service as directed by the court if not otherwise prohibited by international agreement. Nothing in Rule 4(d) suggests that one of these methods is preferred over another. In fact, the use of the disjunctive "or" reflects a choice of equally acceptable alternatives. *See Webster's Third New International Dictionary* 1585 (2002) (defining "or" as indicating "a choice between alternative things, states, or courses"); *see also Denver Horse Imp. Co. v. Schafer,* 58 Colo. 376, 384, 147 P. 367, 370 (1915) (relying on Webster to define "or" as "[a] co-ordinating particle that marks an alternative—as you may read or may write, that is, you may do one of the things at your pleasure, but not both—[and that] often connects a series of words or positions, presenting a choice of either"). Thus, while service "according to any internationally agreed means" is one alternative, service "according to the law of the foreign country," and service "as directed by the foreign authority or the court, if not otherwise prohibited by international agreement," are equally acceptable methods of service:

¶ 19 In defining the four exclusive means of effecting service in a foreign country, C.R.C.P. 4(d) says nothing about effecting

---

**3.** Article 1 also provides that the Convention "shall not apply where the address of the person to be served with the document is not known." 20 U.S.T. at 361. The record in this case suggests that the Hague Service Convention may be inapplicable due to the lack of an address for Rodriguez–Cera. In her deposition, Ms. Torres–Bravo could not provide a mailing address for Rodriguez–Cera and expressed her belief that the homes in her parents' town did not have numbers. Although Willhite's counsel later suggested in a *brief* that Ms. Torres–Bravo provided a mailing address for Rodriguez–Cera, the assertion was not supported by reference to *evidence* in the

record. A mailing address for Rodriguez–Cera does not appear anywhere in the record and the only evidence of any information provided by Ms. Torres–Bravo is the transcript from her deposition testimony, mentioned above. We conclude that there is insufficient evidence in the record to determine whether a street address exists for the home in Mexico where Rodriguez–Cera resides. Accordingly, we do not decide whether Article 1 limits the applicability of the Hague Service Convention when the whereabouts of a defendant are known but a specific street address is not available.

service within the United States on a defendant located in a foreign country. The Rule addresses only how service shall be effectuated if it occurs in a foreign country. Rule 4(d) does not mandate that service occur abroad and does not prohibit another form of service within the United States if otherwise authorized. We consider whether substituted service under C.R.C.P. 4(f) is a valid alternative to service abroad.

## C. C.R.C.P. 4(f) is a Valid Alternative to Service Abroad

■ ¶ 20 C.R.C.P. 4(f) provides for substituted service as an alternative to personal service when a plaintiff[4] has attempted, but is unable to accomplish, personal service. *See* C.R.C.P. 4(f). The plaintiff must file a motion, supported by an affidavit of the person attempting service, describing the efforts the plaintiff has made to obtain personal service and the reasons that personal service failed. *Id.* In the motion, the plaintiff must also provide the identity of the substituted person to whom the plaintiff proposes to deliver process and the address, if known, of the defendant. *Id.* If the court is satisfied that the plaintiff has used due diligence in attempting personal service, that further attempts to obtain personal service would be to no avail, and that the person to whom delivery of the process is proposed "is appropriate under the circumstances and reasonably calculated to give actual notice to the [defendant]," the court must order substituted service. *Id.* In ordering substituted service, the court authorizes delivery of process to the substituted person and orders process mailed to the address of the defendant. *Id.* C.R.C.P. 4(f) also provides that service is complete on the date of delivery to the substituted person. *Id.*

¶ 21 C.R.C.P. 4(f) provides, in its entirety:

In the event that a party attempting service of process by personal service under section (e) is unable to accomplish service, ... the party may file a motion supported by an affidavit of the person attempting

service, for an order for substituted service. The motion shall state (1) the efforts made to obtain personal service and the reason that personal service could not be obtained, (2) the identity of the person to whom the party wishes to deliver the process, and (3) the address, or last known address of the workplace and residence, if known, of the party upon whom service is to be effected. If the court is satisfied that due diligence has been used to attempt personal service under section (e), that further attempts to obtain service under section (e) would be to no avail, and that the person to whom delivery of the process is appropriate under the circumstances and reasonably calculated to give actual notice to the party upon whom service is to be effective, it shall

(1) authorize delivery to be made to the person deemed appropriate for service, and

(2) order the process to be mailed to the address(es) of the party to be served by substituted service, as set forth in the motion, on or before the date of delivery. Service shall be complete on the date of delivery to the person deemed appropriate for service.

¶ 22 Because substituted service is an alternative to personal service, a plaintiff must first attempt personal service before recurring to the court for an order for substituted service. Whether a plaintiff may attempt personal service on a defendant who is located abroad is a case-specific inquiry. If that defendant comes to the United States, there may be an opportunity for personal service within the United States in accordance with C.R.C.P. 4(e). However, if that defendant does not come to the United States, a plaintiff must proceed pursuant to C.R.C.P. 4(d), which provides the exclusive means for effecting service in a foreign country. *See supra.* Accordingly, whether a plaintiff may attempt personal service in a foreign country will depend on whether any applicable international agreement, the law of the foreign

---

4. Rule 4 refers to the "party attempting service" and the "party to be served." While acknowledging that third party complaints and service of documents other than process can affect who is

"attempting" service and who is "being served," we refer to "plaintiff" and "defendant" here for simplicity.

country, or the other means authorized by C.R.C.P. 4(d), allow for personal service. *See, Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1238 (Fed.Cir. 2010) (noting cases upholding personal service in a foreign country when in accord with foreign law). A plaintiff who accordingly attempts personal service but is unable to accomplish it, may seek an order for substituted service from the court pursuant to C.R.C.P. 4(f). We conclude that, when the requirements of C.R.C.P. 4(f) are satisfied, Colorado's Rules of Civil Procedure provide for substituted service within the United States as a valid alternative to service abroad.

### D. C.R.C.P. 4(f) Does Not Implicate the Hague Service Convention

██ ¶ 23 In ordering substituted service, C.R.C.P. 4(f) directs the court to authorize delivery to the substituted person and to order that process be mailed to the address of the defendant. In cases involving a defendant located in a foreign country, Rule 4(f)'s mailing requirement implies the transmittal of documents abroad, which implicates the Hague Service Convention if the transmission is necessary to effectuate service. *Volkswagenwerk*, 486 U.S. at 700, 108 S.Ct. 2104. However, "where service ... is valid and complete under both state law and the Due Process Clause, [the] inquiry ends and the Convention has no further implications." In determining whether substituted service under C.R.C.P. 4(f) is "valid and complete" without the mailing, we are guided by the text of C.R.C.P. 4 and the due process principles that underlie service of process.

¶ 24 By its plain language, C.R.C.P. 4(f) indicates that service is "complete on the date of delivery to the [substituted person]." Because process must be mailed to the defendant "on or before the date of delivery" to the substituted person, procedurally, the mailing, if it occurs, must occur before the date that process is deemed complete. However, the completion and validity of service is linked to the delivery of process to the substituted person and not to the mailing of process to the defendant. If process is never delivered to the substituted person, service can never be valid and complete under C.R.C.P. 4(f). By contrast, service can be valid and complete without the mailing. For example, Rule 4(f) requires a plaintiff's motion for substituted service to include "the address, or last known address of the workplace and residence, if known, of the [defendant]." C.R.C.P. 4(f). By acknowledging that a defendant's address may not be known, C.R.C.P. 4(f) contemplates circumstances in which substituted service is available, even when it is not possible to mail process to a defendant. Although the Rule directs the court to order that process by mailed to the defendant, and failure to comply with a court order may result in sanctions, the mailing is not required to complete service.[5] We conclude that substituted service is valid and complete under Colorado law without the transmittal of documents abroad.

██ ¶ 25 Service also must be valid and complete under the Due Process Clause. *See Volkswagenwerk*, 486 U.S. at 707, 108 S.Ct. 2104. This requires "notice reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

██ ¶ 26 A due process guarantee is built in to the concept of substituted service in Colorado. Before authorizing substituted service, a Colorado court must consider

---

**5.** By comparison, C.R.C.P. 4(g) also directs the court to order that process be mailed to the defendant when authorizing service by mail in proceedings in rem. Under Rule 4(g) the court must order the plaintiff "to send by registered or certified mail a copy of the process addressed to [the defendant], requesting return receipt signed by the addressee only." In contrast to Rule 4(f), Rule 4(g) specifically provides that service is not complete until the filing of the proof of mailing "together with such return receipt attached thereto signed by [the defendant]." C.R.C.P. 4(g). Rule 4(g) reveals that the Rules Committee knows how to adopt language that makes the completion of service dependent on mailing process to the defendant. The Rules Committee did not do that in C.R.C.P. 4(f).

whether delivery of process to the substituted person "is appropriate under the circumstances and reasonably calculated to give actual notice to the [defendant]." C.R.C.P. 4(f). Only after determining that due process is satisfied and substituted service appropriate, does a court order that a copy of process be mailed to the defendant. Accordingly, in Colorado, substituted service on the substituted person satisfies due process without mailing a copy of process to the defendant abroad. We hold that substituted service under C.R.C.P. 4(f) does not require the transmittal of documents for service abroad and therefore the Hague Service Convention is not implicated.[6]

¶ 27 Rodriguez–Cera suggests that allowing substituted service under C.R.C.P. 4(f) as an alternative to service abroad circumvents the Hague Service Convention. As described above, the 1964 revision to the Convention was intended "to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit." *Volkswagenwerk*, 486 U.S. at 698, 108 S.Ct. 2104. Nothing in the text of the Hague Service Convention or the Supreme Court's opinion in *Volkswagenwerk*, suggests that the Convention was meant as the exclusive means of initiating suit against a defendant in a foreign country or as an absolute bar to suing such a defendant if the Convention's methods of service were not used. Article 1 clearly states that the Convention applies only when "there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. 361.

¶ 28 Because C.R.C.P. 4(f) requires that substituted service be "reasonably calculated to give actual notice to the party upon whom service is to be effective," substituted service under Rule 4(f) is consistent with the purpose of the Convention. We do not believe that either the language of Article 1 or the Supreme Court's interpretation of the Convention in *Volkswagenwerk* intended to elevate form over substance, by discouraging an interpretation of forum law that is consistent with the purpose of the Convention and protective of a defendant's due process rights, only because it operates to provide a method of service alternative to the Hague Service Convention.[7]

¶ 29 We now consider whether Willhite could avail himself of substituted service under C.R.C.P. 4(f) in this case.

## V. Application

■ ¶ 30 Willhite initially attempted to serve Rodriguez–Cera personally at his last known address in Colorado. While attempting personal service, he learned that Rodriguez–Cera was residing in Mexico. At that point, Willhite could no longer attempt to serve Rodriguez–Cera pursuant to C.R.C.P. 4(e) because C.R.C.P. 4(d) provides the exclusive means of effectuating service in a foreign country. Because Mexico has objected to all alternative methods of service and only consents to service requests to its central authority, personal service was not available to serve Rodriguez–Cera in Mexico. Thus, "further attempts to obtain service un-

---

6. Numerous state and federal courts have considered similar mailing provisions and concluded that those provisions do require the transmittal of documents abroad and, therefore, do implicate the Hague Service Convention. These statutes, which involve the appointment of an involuntary agent to accept service of process on behalf of certain types of defendants and do not require court approval prior to serving the state agent, are distinguishable from C.R.C.P. 4(f), which requires the court to determine that substituted service is reasonably calculated to give actual notice to the defendant before authorizing such service. *See, e.g., In re Hayes Lemmerz Int'l, Inc.,* 271 F.Supp.2d 1007 (E.D.Mich.2003) (involuntary agent for nonresident transacting business); *Curcuruto v. Cheshire,* 864 F.Supp. 1410 (S.D.Ga. 1994) (involuntary agent for nonresident vehicle owner).

7. We note that federal courts regularly authorize substituted service within the United States pursuant to F.R.C.P. 4(f)(3), which authorizes a court to order alternative forms of service on a defendant located abroad, so long as the method is not prohibited by international agreement and comports with due process. *See, e.g., Nuance Commc'ns,* 626 F.3d at 1240. Rather than treating substituted service under F.R.C.P. 4(f)(3) as a means of circumventing the Hague Service Convention, federal courts conclude that substituted service is available because it is not prohibited by the Convention. *See, e.g., Dyer v. Can–Truck, Inc.,* No. 3:10 CV 1072, 2011 WL 2532871, at *2 (N.D.Ohio June 24, 2011); *FMAC Loan Receivables v. Dagra,* 228 F.R.D. 531, 534–35 (E.D.Va. 2005).

der section (e) would be to no avail." C.R.C.P. 4(f). Because Willhite attempted personal service under C.R.C.P. 4(e) and further attempts at personal service under C.R.C.P. 4(e) would be to no avail, substituted service was available as a valid alternative means of serving Rodriguez–Cera. We therefore make the rule absolute and reverse the trial court's order quashing substituted service.[8]

## VI. Conclusion

¶ 31 For the foregoing reasons, we make the rule absolute and remand to the trial court for further proceedings consistent with this opinion.

Justice COATS dissents, and Justice EID joins in the dissent.

Justice EID dissents, and Justice COATS joins in the dissent.

Justice COATS, dissenting.

¶ 32 I agree with Justice Eid that the mailing requirement of our own Rule 4(f) is, in and of itself, sufficient to make the Hague Convention applicable, and I share her concern that the majority rationale risks abrogating that requirement of our substituted service rule altogether. Even if the mailing requirement were not so express, however, I question whether Rule 4(f) would constitute an adequate substitute, as contemplated by the Supreme Court, for the transmittal of documents abroad.

¶ 33 I do not disagree that in *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988), the United States Supreme Court construed the Hague Convention to apply only when the home state defines the applicable method of serving process as not requiring transmittal of documents abroad; and further, that it found the Convention inapplicable in that case, where it went unchallenged that an

Illinois long-arm statute permitted service on a wholly owned domestic subsidiary in the state, as the involuntary agent for the defendant foreign corporation. Because the Court was not directly faced with the question, however, it had no occasion to explain in greater detail what it intended by either "the applicable method of service of process" or "substituted service," but the case in which it ruled clearly involved no more than a statute authorizing in-state service on an agent instead of, and as the equivalent of, service on the parent corporation in Germany.

¶ 34 Although Colorado has a similar long-arm statute, *see* § 13–1–125, C.R.S. (2011), mandating that service of process on corporations outside the state be accomplished by serving their agent within the state in the manner permitted by Rule 4 of the Colorado Rules of Civil Procedure, and Rule 4 similarly classifies service on a designated agent as an accepted method of effecting "personal service," *see* C.R.C.P. 4(e), the method of service at issue in this case is not similarly an alternative and equivalent form of personal service at all. Rather, it is a secondary and less reliable method of service, hopefully complying with the requirements of due process in any particular case, permitted in this jurisdiction only as a last resort, when personal service cannot be accomplished. We know this to be the case, not because the alternative methods of effecting service in a foreign country described in Rule 4(d) are prioritized in some way, but because Rule 4(f) itself *subordinates* "substituted service" to "personal service," rather than providing an alternate method for effecting "personal service."

¶ 35 Since service by mail or publication alone in a case of this nature would clearly be inadequate, unless the plaintiffs can establish both that they have been unable, despite their due diligence, to effect personal service and that any further attempts to do so would

---

8. In his response to our rule to show cause, Rodriguez–Cera argued that Willhite's motion for substituted service was defective because he did not supply an affidavit by the person attempting service as required by C.R.C.P. 4(f). This issue is not before us. Although Rodriguez–Cera raised the issue to the trial court in his motion to quash, the trial court did not reach the issue because it

found that service under the Hague Service Convention was mandatory. On remand the trial court may consider whether Willhite has complied with the affidavit requirements of C.R.C.P. 4(f) and may hold additional hearings as it deems necessary to determine whether Willhite has satisfied the requirements for substituted service.

be of no avail, Rule 4 therefore requires that defendant Rodriguez–Cera be personally served. *See* C.R.C.P. 4(d), (e), (f). If the Hague Convention applies, it is indisputably an international agreement prohibiting a district court of this state from directing an alternate form of service, according to Rule 4(d), and therefore it must be complied with. Furthermore, if the Hague Convention applies, it prescribes the use of a "central authority" method of service in the contracting foreign country, and by its own terms leaves to the contracting country the choice whether to permit any alternative methods of service, like mailing or service by other competent persons. The question in this case, unlike *Volkswagenwerk*, is therefore whether a local rule that actually requires personal service according to the central authority method of the Hague Convention, unless that method has proven unsuccessful and further attempts would be to no avail, effectively relieves a plaintiff of any obligation to serve a defendant in the foreign country where he is known to reside and, by doing so, renders the Convention inapplicable from the outset.

¶ 36 I understand the majority to hold precisely that. I am reluctant to join this expansive interpretation of *Volkswagenwerk*, in part because it so obviously circumvents a specific compromise of the Convention, to leave the choice of accepting alternate methods of service to each contracting country; but even more importantly, because it renders nugatory any binding effect of an international treaty. There is no suggestion here, as in some cases, that the signatory country refuses to comply with its treaty obligations. *See, e.g., Nuance Commc'ns, Inc. v. Abbyy Software House,* 626 F.3d 1222, 1239 (Fed. Cir.2010) (acknowledging Advisory Committee Note to Fed.R.Civ.P. 4, explaining that service under 4(f)(3) might be justified when a foreign country's central authority "refuses to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States"). If the Convention were held not to apply whenever a forum state concluded, as the district court is being asked to do in this case, that it would simply be too burdensome for the plaintiff to comply, the Convention would be virtually meaningless, or at most optional. By leaving to the receiving country the determination whether to allow alternatives to the central authority method of service, I believe the Convention necessarily leaves to that same receiving country the determination whether, upon the request of another country, service by the central authority method can be satisfactorily accomplished.

¶ 37 Finally, I appreciate the fact that the majority does not actually sanction substitute service in this case, *see* maj. op. at ¶ 30 n. 8, but merely disapproves the district court's determination that it was barred from considering such substitute service and remands for further consideration. In reaching even this result, however, the majority accepts the intermediate proposition that in light of Rule 4(f), personal service in Mexico is not required, and therefore the Hague Convention does not apply. Because I believe Rule 4(f) does not provide a complete or equivalent substitute for personal service in a foreign signatory country, and instead merely provides a last resort alternative when personal service, as otherwise required, cannot be successfully effected, I would agree with the conclusion of the district court that the Hague Convention applies in this situation and must be complied with.

¶ 38 Because I would therefore discharge the rule, I respectfully dissent.

I am authorized to state that Justice EID joins in this dissent.

Justice EID, dissenting.

¶ 39 I join Justice Coats' dissent. I write separately to address the majority's conclusion that "mailing [to the defendant] is not required to complete service" under Rule 4(f), and that therefore the Hague Convention does not apply to this case. Maj. op. at ¶ 24. Under the plain language of Rule 4(f)(2), the court "shall ... order the process to be mailed to the address(es) of [the defendant] ... *on or before the date of delivery*" of process to the substitute party. C.R.C.P. 4(f)(2) (emphasis added). Thus, service is complete only after the process has been mailed to the defendant *and* delivered to the substituted party. Because service is complete under our rule only after the process

has been mailed to the defendant—who, in this case, is located abroad—our rule "defines the applicable method of serving process as requiring the transmittal of documents abroad," and the Hague Convention applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). I therefore respectfully dissent from the majority's opinion concluding otherwise.

¶ 40 When a defendant's address is known,[1] Rule 4(f)(2) requires the plaintiff to mail the process to the defendant. Specifically, if the court finds substituted service is appropriate, the court "*shall ... order* the process to be mailed" to the defendant. C.R.C.P. 4(f)(2). Further, in order to prove that substituted service was provided, Rule 4(h) requires a plaintiff to provide "a duly acknowledged statement as to the date, place, and manner of [substitute] service, *accompanied by an affidavit that the process was also mailed to the [defendant]*, setting forth the address(es) where the process was mailed." C.R.C.P. 4(h)(6) (emphasis added). In short, if the plaintiff does not mail the process to the defendant, Rule 4 explicitly prevents him from proving service.

¶ 41 The majority makes two arguments that service is complete without the mailing. First, it argues that the rule's statement that service is "complete on the date of delivery to the [substituted person]" shows the mailing is unnecessary. Maj. op. at ¶ 24. But the rule requires that the mailing to the defendant occur "*on or before* the date of delivery." C.R.C.P. 4(f)(2) (emphasis added). So the statement that service is "complete on the date of delivery to the [substituted person]" means nothing more than that service is complete after both delivery *and mailing.*

¶ 42 Second, the majority argues that the rule only requires mailing when the address is known. Thus, when the defendant's address is unknown, service must be complete when the process is delivered to the substituted person. Consequently, the majority concludes, service is complete when the process is delivered to the substituted person, even when the defendant's address is known. Maj. op. at ¶ 24. But this is a leap of logic that goes too far. Simply because there may be circumstances under which a defendant's address is not known does not excuse the rule's requirement that mailing occur when the address is known.[2] Such a conclusion violates the plain language of the rule. C.R.C.P. 4(f)(2) (the court "*shall ... order* the process to be mailed" (emphasis added)). Moreover, the due process implications of the two situations are quite different. *See Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 317–18, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (allowing service, under the Due Process Clause, by publication to those parties whose addresses were unknown, but requiring mailing to those whose addresses were known). By requiring that the process be mailed to the defendant in addition to being delivered to the substituted party, the rule furthers due process by ensuring that notice of the action will reach the defendant. *See* Richard P. Holme, *2006 Amendments to the Civil Rules: Modernization, New Math, and Polishing*, 35 Colo. Law. 21, 24 (2006); *see also Wuchter v. Pizzutti*, 276 U.S. 13, 19, 48 S.Ct. 259, 72 L.Ed. 446 (1928) (holding that, without a requirement that the state official mail the process to the defendant, a statute allowing substituted service on a state official violated the Due Process Clause).

¶ 43 We have narrowly construed rules allowing substituted service. *See, e.g., Re-*

---

**1.** The majority notes that when Ms. Torres–Bravo, the substituted person, was deposed, she "could not provide an address for her parents' home and believed that the homes in that small town did not have numbers." Maj. op. at ¶ 4. But the plaintiffs, at some point in time, acquired the address from Ms. Torres–Bravo. *See* Response to Defendant Paulo Rodriguez–Cera's Motion for Enlargement of Time to File Answer or Otherwise Respond to Plaintiffs' Amended Complaint, p. 3 n. 2, July 22, 2010 ("Defendant Paulo's sister, Lydia Torres–Bravo, provided both a cell phone and a mailing address for her par-

ents. Defendant Paulo is now living under his parents' care, so Defendant Paulo's counsel is virtually assured of contacting Defendant Paulo through his parents.").

**2.** It is likely that the defendant's address would be known in most cases. Rule 4(f) states that the court must be satisfied that the plaintiff used "due diligence" to attempt personal service. In completing due diligence, the plaintiff is likely to learn the defendant's address, as occurred in this case.

*Mine v. Dist. Court*, 709 P.2d 1379, 1382 (Colo.1985) ("[S]tatutes or rules providing for substituted service are in derogation of common law and must be strictly construed and followed...."); *Ernst v. Colburn*, 84 Colo. 170, 173, 268 P. 576, 577 (Colo.1928) (holding that, where the rule allowed substituted service on a family member at the defendant's residence "between the hours of eight in the morning and six in the evening," service at 6:20 p.m. was invalid). I would do the same here and hold that, when a defendant's address is known, service under Rule 4(f) is not complete until the plaintiff mails the process to the defendant as required by Rule 4(f)(2).

¶ 44 As applied here, Rule 4(f)(2) requires the plaintiffs to mail the process to the defendant, who is located abroad, "on or before" the date the process is delivered to the substituted party. The rule therefore requires "the transmittal of documents abroad," and the Hague Service Convention applies. *Volkswagenwerk*, 486 U.S. at 700, 108 S.Ct. 2104.

¶ 45 When confronted with similar state mailing procedures, a host of federal courts have come to the same conclusion. *See, e.g., Vega Glen v. Club Méditerranée S.A.*, 359 F.Supp.2d 1352, 1355–56 (S.D.Fla.2005) (Florida statutes allowed substituted service through the secretary of state, but also required the mailing of process to the defendant, which triggered the Hague Service Convention); *In re Hayes Lemmerz Intern., Inc.*, 271 F.Supp.2d 1007, 1030–33 (E.D.Mich. 2003) (Delaware statute allowed service on the resident agent of a nonresident company, but also required process to be mailed to the company, which triggered the Hague Service Convention); *Davies v. Jobs & Adverts Online, Gmbh*, 94 F.Supp.2d 719, 721–22 (E.D.Va.2000) (Virginia statutes allowed substituted service on state clerk for foreign corporations transacting business in-state, but the clerk was required to mail the pro-

cess to the defendant, which triggered the Hague Service Convention); *McClenon v. Nissan Motor Corp.*, 726 F.Supp. 822, 824–25 (N.D.Fla.1989) (same as *Vega Glen*). *Cf. Melia v. Les Grands Chais de France*, 135 F.R.D. 28, 32 (D.R.I.1991) (where the statute required the secretary of state, not the plaintiff, to mail the process to the defendant, the Hague Service Convention was not triggered). I fail to see how this case differs from the federal cases. The majority tries to distinguish the federal cases because Rule 4(f), before authorizing service, requires a court to determine that the substituted service is reasonably calculated to give actual notice to the defendant. Maj. op. at ¶ 26 n. 7. While that fact may play into a due process analysis, it makes no difference in interpreting the plain language of the rule, which, on its face, requires mailing.

¶ 46 The underlying justification for today's decision appears to be that it is difficult to comply with the Hague Convention in this case. Maj. op. at ¶ 5 n. 2 (cataloging the "obstacles and bureaucratic challenges" facing the plaintiffs in attempting service of process in Mexico in accordance with the Hague Convention). But significantly, the majority's interpretation of the language of Rule 4(f) applies to both domestic and international service. As a result, the effect of the majority's decision is to read the mailing requirement entirely out of Rule 4(f). Because such diminishment of the mailing requirement is inconsistent with the rule's plain language, I respectfully dissent.

I am authorized to state that Justice COATS joins in this dissent.